[No. 4717.]

## THE GRAND VALLEY IRRIGATION COMPANY v. THE FRUITA IMPROVEMENT COMPANY.

1.  **Corporations—Assessments—Published Notice—Personal Notice—Estoppel.**

    The by-laws of a corporation provided that, when assessments were levied, the secretary should notify the stockholders by mail and by making publication in a newspaper. This rule uniformly, and with the full acquiescence of all the stockholders, was violated, only personal notice being given. In an action, brought by one of the stockholders for damages caused by the sale of his stock for failure to pay an assessment, the complaint alleged that the plaintiff had received notice of the assessment, while in the replication it was alleged that the defendant company had not made a publication thereof in some newspaper as the by-laws required. Held, that the plaintiff was estopped to depart by way of its replication from his admission made in the complaint; and, though the issue were properly raised, in view of the fact that plaintiff had received personal notice, and that it had been the uniform custom of the company not to publish the notice, in which the stockholders acquiesced, the plaintiff is not now in position to complain of such failure.—P. 498.

2.  **Judgment—Estoppel—Subsequent Action.**

    Where a second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters actually litigated and determined, and not what might have been.—P. 500.

3.  **Judgment—Res Judicata—Proof.**

    One who interposes a plea of res adjudicata must establish it by a fair preponderance of the evidence.—P. 501.

4.  **Judgment—Subsequent Action—Issues Involved—Res Judicata.**

    The by-laws of an irrigation company provided that the expense of operating its canals and ditches should be defrayed by

assessments upon the stock, and that if any stockholder desires water delivered beyond the end of the original canal, he must pay the cost of such extra delivery. A stockholder brought an action to enjoin the execution of a contract by the company to furnish water beyond the end of the canal at a price inadequate to make such delivery. It was alleged in the complaint that the assessment for that year was three or four times as large as it ought to be to meet the company's regular expenses; that the excess was to be used to carry out this ultra vires contract; and the prayer demanded that the company be enjoined from levying an assessment for such purpose, that the assessment already levied be declared void, and that the company be restrained from delivering the water beyond the end of its original canal unless such user should pay the additional cost of such delivery. A decree for plaintiff enjoined the execution of the contract, and the levying or collecting of any assessment for the purpose of delivering water in accordance with such contract. Thereafter the original assessment was reduced, and, upon failure to pay the same, plaintiff's stock was sold pursuant to the by-laws. The plaintiff brought an action for damages upon the ground that such sale was illegal because the assessment was void, in accordance with the former decree. Held, that the judgment in the first suit was not necessarily conclusive against the validity of the reduced assessment, and the burden was on plaintiff to show that the validity of the original assessment was passed upon at that time; and that evidence offered by the defendant to show the contrary, and also that the reduced assessment was not to be used for any purpose prohibited by the injunction was proper.—P. 503.

5. Corporations—Assessments Partially Invalid—Reduced Assessments.

Where an assessment levied by an irrigation company to defray the expenses of operation for one season was held excessive and partially invalid, because a portion of the money was to be used in carrying out an ultra vires contract, the reduction of such assessment by the board so as to cover the legitimate expenses was in effect a new assessment, and not affected by such former decree.—P. 504.

6. Judgment—Subsequent Action—Res Judicata—Judge Presiding at Both Trials—Findings Not Conclusive.

Where, in a subsequent action between two parties, the same judge presided and sustained a plea of res adjudicata as to one issue, although much weight ought to be given to his judgment, such finding is not conclusive; and whether or not such point

was previously litigated must be determined by the decree, pleadings and record, and, if they are silent upon the question, by extrinsic evidence.—P. 505.

7.   Corporations—Stockholders—Failure to Pay Assessments— Sale of Stock—Damages—Evidence.

Where shares of stock held by one corporation in another were wrongfully sold by the latter for the amount of an unpaid assessment, the holding company is not entitled to recover the full value of the shares if it was the purchaser. Hence, in an action for damages for such wrongful sale, evidence that the purchaser owned practically all the stock in the plaintiff company is admissible.—P. 505.

8.   Corporations—Stockholders—By-Laws—Waiver.

Where a provision of the by-laws is for the benefit and protection of the stockholders themselves, they may waive it, and such by-law, as to them, is repealed by their acquiescence in the uniform practice of the company in disregarding it.—P. 509.

9.   Appellate Practice—Averments Stricken from Pleading—Evidence Excluded—Estoppel.

Where certain averments of the answer were stricken out on motion of plaintiff, he cannot urge on appeal that evidence supporting such averments was properly excluded, because relating to a defense which must be affirmatively pleaded.—P. 512.

*Appeal from the District Court of Mesa County.*
*Hon. Theron Stevens, Judge.*

Action by The Fruita Improvement Company against The Grand Valley Irrigation Company. From a judgment for plaintiff, defendant appeals. Affirmed in part, and reversed in part. Rehearing denied *en banc.*                *Remanded.*

Mr. CHAS. F. CASWELL, for appellant.

Mr. JOHN P. BROCKWAY, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The complaint in this action, brought by The Fruita Improvement Company, as plaintiff below, against The Grand Valley Irrigation Company, appellant and defendant below, contained two causes

of action.  The second cause of action is based upon
a breach by the defendant of a contract, whereby it
promised to pay $1,900 for professional services
rendered by John P. Brockway, an attorney, whose
cause of action thereon was assigned to the plaintiff.
By the first cause of action, plaintiff sought to re-
cover of the defendant company the sum of $10,000
damages, sustained as the result of an unauthorized
sale by the defendant of 1,750 shares of the defend-
ant's capital stock, which the plaintiff owned.  In
the district court, there was a judgment for the plain-
tiff upon the two causes of action in the aggregate
sum of $5,397.01, of which $4,825.36 was on the first
cause of action, and $571.65 on the second.

1.   No prejudicial error of the trial judge or
jury affecting the second cause of action has been
called to our attention.  The judgment thereunder
will be affirmed.

2.   The judgment which the plaintiff recovered
under the first cause of action, however, cannot be
sustained.  The most important question involved
in this appeal concerns a ruling of the trial court, in
the plaintiff's favor, that the matters sought to be
litigated in this action by the defendant are *res
judicata* by a decree in a former action between the
same parties.  It becomes necessary, therefore, to
state fully the contents of the pleadings in both
actions, the evidence which the court admitted, and
the rejected offer of proof made by the defendant in
the pending action.

It appears from both complaints that the defend-
ant irrigation company was organized for the pur-
pose of acquiring water rights and canals, and, with
the irrigation system thus acquired, to supply water
for irrigation to its stockholders.  Under its charter
and by-laws, it was not a common carrier of water,
did not have the power to make contracts to sell or

rent water, or to carry for hire, or for any purpose whatever, except to its own stockholders. Its board of directors had the power, in January of each year, to levy an annual assessment, the proceeds of which could be used only for paying interest on the company's bonded indebtedness and the cost of maintenance and operation of its canals and ditches for the current year. Provision existed, also, for assessments for the same purpose at other, or subsequent, times during the year.

When an annual assessment is levied, the secretary of the company is required to notify the stockholders of the same, and of the time and manner of paying, by depositing in the post office a suitable notice to the several stockholders, and making publication thereof in some newspaper published in the town of Grand Junction for the period of one week. If any stockholder fails to pay after such notice, the company may resort to one of three methods for compelling payment: First, by refusing to supply him with water; second, by bringing suit in court to recover the amount of the assessment; third, by selling the delinquent stock to the highest bidder, after a specified publication of notice of sale.

By another by-law, each share of stock entitles its holder to receive 5-16 of a statute inch of water, at any point along the line of defendant's canal, as the same was originally built, to be delivered under such regulations as the board of directors prescribes. Each stockholder is also entitled to have water delivered to him, not only at any point along this original line, but also on any land lying north or west of a certain ravine, into which the company's ditch, as first constructed, emptied. But, if water is delivered at such point beyond the end of the original canal, the stockholder who demands it must pay to the company, in addition to the usual assessment,

whatever extra cost is incurred in making such delivery.

In the original complaint, filed in February, 1901, as well as in the complaint herein, which was filed December 31, 1901, the foregoing facts are recited; and, in the later complaint, it is further alleged that, in such former action between the same parties in the same court, wherein the Fruita company was plaintiff and the Grand Valley company defendant, a hearing was had upon the matters then in issue, which resulted in a final decree in plaintiff's favor. In that injunction suit, as appears from the complaint therein, it was alleged that the Grand Valley company had entered into a contract with The Colorado Sugar Manufacturing Company; one of its stockholders, for the delivery of 2,000 inches of water at $2.50 per inch, 1,000 inches of which was to be delivered during the year 1901 for the aggregate sum of $2,500, which contract, it was alleged, was *ultra vires* the company, in direct contravention of its charter and by-laws hereinabove referred to.

The complaint charged that the Grand Valley company, under its charter and by-laws, could not make any extension of its ditch, or deliver any water beyond the end of its originally constructed canal, to any of its stockholders at the expense of the company itself, or of the other stockholders, but the same could be made only upon the payment by the sugar company, a stockholder, of the entire cost thereof; that the sum of $2,500 was not sufficient therefor, but the cost would be at least $10,000. In order that the Grand Valley company might carry out that contract, it was charged that its board of directors, on January 28, 1901, had made an annual assessment upon its stock of $ .80 per share, which was three or four times as large as it ought to be to meet its regular expenses. The object of this illegal

contract was said to be to induce the sugar company to retain its factory at Grand Junction, and its effect would be to make a present by the Grand Valley company to the sugar company of about $10,000, at the expense of the stockholders of the former, and without any corresponding benefit to them. Because of the irreparable damage which the defendant company and its stockholders would sustain, if such illegal contract was carried out, plaintiff, as a stockholder, prayed that the Grand Valley company be perpetually enjoined from performing its part thereof, and that any assessment which its board of directors had theretofore levied, or might thereafter levy, for the purpose of delivering water to the sugar company at and for the price named, or for any other price, except the full and actual cost thereof, be enjoined, and that the $ .80 assessment previously levied be declared void, and that defendant company be enjoined from delivering water to the sugar company beyond the end of its original canal system, unless the sugar company paid all the extra costs and expenses which an enlargement and improvement of the canal for such purpose would entail and general relief was prayed for.

Issues were joined upon this complaint, and a hearing had, resulting in findings for the plaintiff, and, on March 7, 1901, the court entered a decree, which, as it is material here, we quote in full:

"Now, therefore, the court doth order, adjudge and decree that the said defendants be, and each of them are, perpetually enjoined from in any manner carrying out the contract (so-called) mentioned in the complaint and pleadings herein; and that the defendants, other than The Colorado Sugar Manufacturing Company, be perpetually enjoined and restrained from levying or collecting any assessment or assessments upon the stockholders of The Grand

Valley Irrigation Company for the purpose of delivering, or undertaking to deliver, water out of the end of its canal system, or in accordance with the contract with The Colorado Sugar Manufacturing Company * * * in the pleadings in this cause.''

This decree has never been appealed from, and remains in full force and effect, and, as to all matters and things set forth in the complaint in the injunction suit, which has been above summarized, the same, plaintiff says, have become and are *res judicata* as between the parties to the present action.

The complaint herein then proceeds by alleging that, after the rendition of such decree in the injunction suit, the defendant Grand Valley company undertook to enter into another contract with the sugar company exactly similar to the former one, except that the sum to be paid by the sugar company for the delivery of 1,000 inches of water, during the year 1901, beyond the end of the defendant's canal system was fixed at $6,000 instead of $2,500, as in the first contract, and that such action of the ditch company is in violation of the previous injunction decree and contrary to the provisions of the defendant's by-laws; but, notwithstanding this fact, the ditch company has begun the work of enlarging its canal, so that it may deliver, for $6,000, the 1,000 inches of water to the sugar company under the second contract. That the defendant company, acting under its by-laws, had made, during the previous January, one assessment of $ .80.per share upon its capital stock, for the illegal purpose of carrying out the first, or $2,500, contract, already mentioned, and which was the subject of the litigation in the injunction suit, and that this assessment was the only one made during the year 1901, and was, as the plaintiff says, adjudged illegal and void by the court in the injunction action, and its collection thereby enjoined. But,

in direct violation of this injunction, plaintiff says that the defendant Grand Valley company, in the month of October, 1901, advertised for sale, under the provision of its by-laws heretofore mentioned, 1,750 shares of the plaintiff's capital stock in defendant company, and gave notice to the plaintiff that it would sell the same at public sale for the purpose of enforcing the collection of such illegal assessment; and, in pursuance of that notice, plaintiff says that, on the 27th day of November, 1901, and in accordance with the preceding notice, defendant caused plaintiff's stock to be sold for the purpose of enforcing the illegal assessment; and, at this sale, made in pursuance of the by-laws of the defendant company, John P. Brockway bid at the sale, and plaintiff's stock was struck off to him for the sum of $1,835; and whereupon the defendant company issued to Brockway the stock therefor, and Brockway now appears on the books of the company as its owner. Judgment is therefore asked against the defendant company for the value of the stock at the time of the sale.

To the complaint, whose substance is above recited, the defendant made answer herein, admitting the bringing of the former injunction suit, the decree therein, the provisions of the by-laws quoted, the making of the assessment that was alleged to be illegal, and the sale of plaintiff's stock. The answer also admits that, after the entry of the injunction decree, defendant entered into the second contract described in the complaint, and, in pursuance thereof, enlarged a portion of its canal system, in order that it might deliver water to the sugar company, one of its stockholders, in accordance with the terms of the contract. It denied, however, that this second contract was in violation of the former, or any decree of court, or that the same was prohibited by any provision of its by-laws. It also alleged that the cost

of making the enlargement under the second contract was not in excess of the $6,000 which it received from the sugar company and other stockholders therefor, and that such sum, so received, and none other, was paid for such enlargement and improvements.

The answer also alleged that, after the decree in the injunction suit was entered holding the assessment of $.80 per share illegal, for the purpose of carrying out the first, or $2,500 contract, the defendant company reduced the same to the amount necessary for carrying on the ordinary business and meeting the usual expenses of the company, to wit, to the sum of $2.80 per inch, or at the rate of $.65 per share of stock; and that no portion of said assessment, or of any sum received thereupon, was intended or expended for the purpose of enlarging the canal, or delivering water at the end thereof to the sugar company or other stockholders under the second contract, or at all, but, on the contrary, the averment is, that all of the said sum received from the reduced assessment of $.65 per share was levied and expended to pay interest on its bonded debt, and for the usual and ordinary operation and maintenance of its canal system; and that plaintiff's stock in defendant's company was assessed at the same ratio as other stock, namely, $.65 per share, which plaintiff refused to pay, and, because of such refusal, the defendant company advertised and sold the same for the purpose of collecting this reduced assessment, and not otherwise. There is a denial that defendant ever gave, or plaintiff received, any notice from it that any sale was, or would be, made for the purpose of enforcing the illegal assessment of $.80 per share, and it is denied that plaintiff's stock was ever advertised or sold for any such purpose, or for any purpose except the failure to pay the reduced assess-

ment of $.65 per share.   There was also an allegation that Brockway, the purchaser at the sale, at the time was the president of the Fruita company and the owner substantially of all of its capital stock.

In the replication there was a departure from the allegations of the complaint in that, while the complaint alleged that the plaintiff company had received notice of the assessments made by the defendant during the year 1901, in the replication there was an averment that defendant company had not made a publication thereof in some newspaper published in the town of Grand Junction, as the by-laws required should be done.

Upon these issues the present action proceeded to a trial below.   Aside from the admissions of the answer, the only material evidence for the plaintiff consisted of the oral testimony of Mr. Brockway, the president and attorney for the plaintiff company. After testifying to the making of the second contract, he said that the defendant company was proceeding thereunder to deliver water to the sugar company, as charged in the complaint; that the plaintiff owned 1,750 shares of the defendant company's capital stock, and that, on January 28, 1901, the defendant attempted to levy an assessment of $.80 per share on its capital stock, and, in April of that year, its board directed a rebate of $.15 per share. He says that no notice of any assessment for 1901 was published in any newspaper printed in Grand Junction.

He owned 196 out of 200 shares of the plaintiff company's capital stock, he and his wife practically owning all of it.   Mr. Brockway testified that he did not know the cost of the enlargements and improvements of defendant's canal, which were to be made under the second contract, or what part of the $6,000 received from the sugar company was expended by

the defendant in that work. He says that he did not know anything about the $.65 assessment, or what part of the $.80 assessment was expended for the sugar company enlargement. He admits that he received notice in writing of the assessment of $.80 per share, and that it was one of the usual notices sent out by the defendant company. Before the sale he also saw the order of the board of directors, in their record book, as to the $.15 rebate. The first notice he received through the mail in January or February, 1901, and the so-called rebate order was made in the following March or April. Whether the aggregate assessment of $1,835, for failure upon the part of plaintiff to pay which the sale was made, was the result of the $.80 or $.65 assessment per share, he does not know. He says that he only knows the amount was claimed by defendant company on the assessment of that year, and the stock was sold for failure to pay it. Whether this sum included delinquent assessments for preceding years, he is not informed; but, in any event, he says no notice of any assessment for the year 1901 was published in any newspaper in Grand Junction.

The foregoing, we think, sufficiently summarizes the plaintiff's evidence in support of its cause of action.

The defendant produced one of its directors, and offered to show by him the cost and expense of making the enlargement of the canal, under the second contract with the sugar company, was within the amount received from the latter. To this the plaintiff objected, because the estimated cost had been litigated in the injunction suit, and since, in that action, the holding was that the first contract could not be carried out, it necessarily included the holding that the assessment therefor was invalid, and that that assessment could not be collected, because the same

had been previously enjoined, and the sale of stock for failure to pay it would be illegal, irrespective of the question of what disposition the company intended to make of the money when collected.

In sustaining plaintiff's objection to this question, the court clearly indicated the theory upon which its important rulings were made. It applied the doctrine of *res judicata,* as appears from the following language of the court:

"While the validity of the assessment was not directly mentioned in either the findings of the court nor in the judgment, there can be no question as to what was litigated. The allegations of the complaint are, that the assessment was levied for the purpose of enlarging this ditch to carry out the contract entered into between the irrigating company and the sugar company. If the question of the validity of that assessment had not been litigated, or had not been involved, the plaintiff in the action would have had no cause for action, for the reason that, if they had made some other arrangement towards carrying out their contract with the sugar company, whereby none of the stockholders would have been assessed for doing it, then there would have been no cause of action on the part of the stockholders, and the case would have had to go out of court. The court held in that case that there can be no assessment made for any other purpose than provided by the by-laws, and as the assessment had been levied for the purpose of enlarging that ditch, the plaintiff in that action had a right of action, and the court would enjoin the making or collecting of an assessment for that purpose, and the allegations of the the complaint were that the assessment had been made for that purpose; had been made three or four times larger than was necessary for the ordinary purposes of cleaning out and necessary expenses, as

contemplated by the by-laws, and, in view of the record here, while the court at that time did not announce in so many words that the assessment was illegal, the whole support of the findings and the decree was to the effect that it was illegal, and could not be sustained; the objection will be sustained.''

Defendant's counsel then offered to prove by this witness, who was one of its directors, its auditor and a member of its construction committee, that no assessment was made in the year 1901 to enlarge its system for delivering water to the sugar company in accordance with the second contract, and that no money of the company was ever used for any such purpose, and no assessment ever collected therefor; that, upon a demand of different stockholders, including the sugar company, it was required to deliver water, as its by-laws provide, at the lower end of its canal, and that, by this second contract between the defendant and the sugar company, the latter paid $6,000 for making the enlargement, which was necessary in order to make delivery of the extra amount of water so required, and that all such work cost less than the $6,000 which defendant received from the sugar company, and that no part of the cost of enlargement was paid from any assessment made upon, or collected from, the other stockholders. This offer was rejected by the court, for the reason already given.

The defendant then offered to prove that it had, for the first time, learned at the trial that the $1,835, the aggregate of the assessment for which plaintiff's stock was sold, was made up from a delinquent assessment of over $800 for the year 1900, as well as for the delinquent assessment of 1901, made at the rate of $ .65 a share, no part of which was used for the enlargement of the canal under the second contract, and asked leave to amend its answer to corre-

spond to the proof, permission to do which was refused by the court, because the evidence thus sought to be produced was incompetent, irrelevant and immaterial.

The books of the company show that the January assessment of $ .80 a share was made for the purpose authorized by the company's by-laws. Afterwards, and in March or April of that year, and after the $ .80 per share assessment had been, as it is said, declared illegal in the injunction suit by the former decree of March 7, the defendant company books show the following entry:

"In the matter of a readjustment for the assessment for the year 1901. Moved and seconded that 15 cents per inch of the assessment, as levied January 28, 1901, be rebated to the several owners of water in the canals of this company. Motion carried. All members present voting 'Yea'."

The findings and rulings of the trial court in the injunction suit were introduced in evidence, from which it appears that the trial judge held that the defendant company had the power to enlarge its ditch to meet the requirements of its stockholders, but, as no provision in its charter or by-laws had been made for obtaining money for such purpose, its stockholders could not be required by assessments to provide money therefor, and any attempt to levy an assessment on them for the same would be illegal, unless the stockholders unanimously voted for it; and the court then expressly said that the defendant company had the right, and it was its duty, to deliver water at any point on the canal that a stockholder desired it, and, if the stockholder made such request, the company must comply therewith; but that such requesting stockholder or stockholders would be obliged to pay the additional expense or cost which would be necessitated by the enlargement

32

of the lower end of the ditch, if water was wanted at a point beyond. The conclusion of the court was, that the $2,500, which the sugar company agreed to pay the defendant company under the first contract, was not sufficient to cover such extra cost of the enlargement. Therefore, it entered the decree already copied, enjoining the ditch company from carrying out the contract, or from making or collecting any assessment for the same. At the conclusion of the evidence herein, the case, as made by the pleadings and the evidence, and the rejected offer by the defendant to produce evidence, the trial court was of the opinion that the decree in the injunction suit was *res judicata* as to the invalidity of the assessment in question, and so instructed the jury.

Before proceeding with the principal question, we notice first the contention of plaintiff that the assessment for which its stock was sold was illegal, because the defendant company had not published, in some newspaper in Grand Junction, notice of the assessment. The record is clear that the plaintiff company, through its president, had actual notice and knowledge of whatever assessment or assessments were made during the year 1901. It also appears that, uniformly and with the full acquiescence of all its stockholders, the defendant company has never published notice of its assessments in a newspaper, but has given only personal notice thereof. In addition to this, the complaint alleged that plaintiff had received notice of the assessment, and to permit it by way of replication to depart from this admission would be improper.

If, however, the issue was properly raised in the case, in view of the fact that the plaintiff company had received personal notice of the assessments, and that it had been the uniform custom of the defendant company, in which the stockholders acquiesced, not

to publish the same, we are of opinion that plaintiff is not now in a position to complain of this failure. The authorities, we think, clearly support this conclusion.—Clark & Marshall on Corp., § 640, p. 1952; § 500, p. 1535; *Clark v. Ins. Co.,* 6 Cush. 342; *Bank v. Pinson,* 58 Miss. 421; *Jones v. Sisson,* 6 Gray 288; *R. R. Co. v. Gaster,* 20 Ark. 455; *Plank Road Co. v. Thatcher,* 11 N. Y. 102.

As already stated, the important question in this case, which is the main contention of the plaintiff, relates to the doctrine of *res judicata.* Plaintiff's position in this behalf is that, as there was but one assessment for the year 1901, it must necessarily, under the issues of the injunction suit, have been determined to be illegal, because the court enjoined defendant company from levying or collecting any assessment that had theretofore been, or might thereafter be, made for the purpose of defraying the cost of enlarging its ditch to deliver water to the sugar company under the $2,500 contract, and since plaintiff's stock was sold for failure to pay this invalid delinquent assessment, that sale was void, because the former decree was *res judicata* upon that subject.

Defendant's position, on the other hand, is that, while but one formal assessment at the rate of $.80 per share was made during 1901, it was not adjudged invalid, except as to its application to the work called for by the first contract, and that after defendant had been enjoined in the former action from collecting from the stockholders any assessments for carrying out that contract, its board of directors, in the subsequent March or April, reduced the former assessment $.15 per share and made the same $.65 per share, to be devoted solely to the legitimate purposes of the campany, and this, in legal effect, was a second and valid assessment, independent of the former one,

and not affected by the decree in the injunction action, whatever that decree determined.

The doctrine has often been stated in the law books that a valid judgment is conclusive between the parties to the action in which the judgment was rendered, not only as to such matters as were in fact therein determined, but also as to every other matter which the parties might have litigated as incident to, or essentially connected with, the subject-matter of the litigation, whether the same, as a matter of fact, were, or were not, then considered.—*D. C. I. & W. Co. v. Middaugh,* 12 Colo. 434.

This general statement, however, must be taken in connection with the facts of the particular case, as is well illustrated in *Johnson v. Johnson,* 20 Colo. 143, where Mr. Justice Goddard said that if the matter alleged to be conclusive was not incidental or essential to the determination of the subject-matter that was litigated, and was left expressly undetermined, then the doctrine does not apply.

The leading case on this general subject is *Cromwell v. County of Sac,* 94 U. S. 351. It was there said that the difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action for the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action, is this: In the former, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It concludes the parties as to every matter which was offered and received to sustain or defeat the claim or demand, and as to every other substantial matter which might have been offered for that purpose; but where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters

actually litigated and determined, and not what might have been. The same rule is found in *Davis v. Brown,* 94 U. S. 423, and *Russell v. Place, Ibid.* 606.

The concluding sentence of the foregoing statement contains the rule which determines this case. The cause of action in the first or injunction suit was the wrongful action of the defendant in making, and undertaking to perform, an illegal contract with the sugar company, whereby, in violation of its charter and by-laws, it obligated itself to enlarge its ditch or canal, and deliver water to one of its stockholders at a price less than such enlargement could be made for, and at the expense of all of its stockholders, instead of at the expense of the one with whom the contract was made. The object of that action was to enjoin the carrying out of this illegal contract. The present cause of action against defendant company by the plaintiff, is defendant's wrongful conduct in selling plaintiff's stock for failure of the latter to pay what is said to be an illegal assessment, and the object of the action is to recover, as damages, the value of the stock which was sold. The two causes of action are not the same, though some of the issues involved may be similar or identical. Therefore the rule for ascertaining whether the matters sought to be litigated here were determined in the former action, is different from the rule which governs when the two causes of action are the same.

One who interposes a plea of *res judicata* must establish it by a fair preponderance of the evidence. The plaintiff at the trial below and here claims that burden was discharged, because in the injunction suit necessarily the illegality of the $.80 assessment was determined. The proofs relied upon are the pleadings and decree in the injunction action, which have been summarized or heretofore copied. The decree on its face enjoins the defendant from carrying out

the illegal contract, and from levying or collecting of its stockholders any assessment to be used for the purpose of delivering, or undertaking to deliver, water out of the end of its canal system, or in accordance with its contract with the sugar company. The decree does not purport to declare that the assessment made on the 28th of January was invalid for every purpose. Its legal effect is merely to enjoin the defendant from applying the same, if collected, to the enlargement or extension of the canal, or delivering of water at the end thereof, as it would be required to do under its contract with the sugar company if that contract was valid.

Indeed, the plaintiff expressly limited the issue concerning assessments, by asking for an injunction restraining the levy or collection thereof, only to the extent of using the money arising therefrom for the illegal purpose of carrying out the first contract. The injunction complaint expressly recognized that the defendant company might enlarge its canal and deliver water, provided the expense which the same occasioned was met by the stockholder asking therefor. If, therefore, the decree purported to pass upon the validity of any assessment which was not made for the illegal purpose charged, it would, to that extent, be outside the issues and void. We cannot so construe the decree, in the absence of clear proof that such are its provisions.

But if, under the issues in that case, the validity of this assessment might have been determined, in so far as concerns the contract then before the court, the decree might well have been what it was, irrespective of the legality of the assessment; for, as the record here shows, the trial judge specifically held that it was competent for the defendant company to enlarge its ditch and deliver water out of the end of its canal system, not at the expense of its stock-

holders, but at the expense of the stockholders mak-
ing the request therefor.  So that, if, as the court
found, the contract in question could not be per-
formed by defendant for the consideration moving
from the sugar company, hence *ultra vires* as being
contrary to its by-laws, then the question as to the
validity of the assessment was immaterial.  The con-
tract should have been enjoined at all events.

The defendant here offered to show, and did
show, by the stenographer who took the testimony in
the injunction suit, that no evidence whatever was
introduced with reference to the validity of the Jan-
uary assessment.  The resolution, or the motion for
the assessment, as it appears on the books of the
company shows that it was made for paying interest
on defendant's bonded debt, and for its ordinary
expenses.  It could not well be, therefore, in the ab-
sence of any evidence upon the subject, that the court
intended to, or did, declare it invalid for all pur-
poses.  The plaintiff, therefore, should, in view of
these considerations, have shown that the issue, as
to the validity of this assessment, was, as a matter of
fact, expressly litigated and determined, which it
failed to do.  Defendant's offer to show that it was
not then determined certainly should have been en-
tertained by the court in this action.  For the fore-
going reasons the judgment on the first cause of ac-
tion was wrong.

But, if it were necessary, we might grant, for our
present purpose, that the January assessment of
$.80 per share was determined to be illegal in the
injunction suit, in so far as it was to be devoted to
the illegal, or first, contract, and as one reading of
defendant's answer would seem to admit, and we
might also concede that, if defendant relied solely
upon that assessment, and its validity for that pur-
pose, to uphold its sale of plaintiff's stock, it might

be concluded upon that question by the former judgment. But we are of opinion that the act of defendant's board of directors in reducing from $.80 to $.65 per share the assessment for 1901 was, in legal effect, a second assessment, made after the decree in · the former case was rendered, and in no sense thereby affected. The allegation of the answer and defendant's rejected offer of proof were that this entire assessment of $.65 per share was levied, and, so far as collected at all, gathered and expended for the legitimate and proper purpose of paying interest and caring for the ordinary expenses of operating the line, for which assessments could be lawfully made under its by-laws. This offer of proof should have been allowed, and if the answer in this respect was proven it would be a sufficient defense to the action.

The answer further alleged, and defendant offered to show, that the entire cost of making the enlargement under the second, or $6,000, contract was to be borne by, and actually was paid by, the stockholders requesting it to be made, and that no part whatever of the assessment of $.65 per share, for failure to pay which plaintiff's stock was sold, was used or expended in carrying out the same, but, on the contrary, was exclusively used in paying interest on defendant's bonded debt, and the ordinary maintenance of its canal. Certainly, if true, these averments constitute a sufficient defense.

Since, therefore, the plaintiff has not, as was its duty to do, sustained the plea of *res judicata* by showing that the assessment for which plaintiff's stock was sold was actually litigated in the injunction suit, and there determined to be invalid, and also because the court improperly refused defendant's offer to show that such was not the case, and that the particular assessment for which the stock was sold was not levied, and no attempt was made

to collect it for any purpose prohibited by its by-laws, or in violation of the former injunction, the judgment upon this cause of action, which was brought about by the court's incorrect instruction that the question of such assessment was *res judicata,* must be set aside.

The same judge presided at the trial of both actions, and much weight ought to be, and has been, given to his judgment; but in reaching his conclusion that the plea of *res judicata* was sustained, his statement that in the former action that particular issue must have been determined is not conclusive. Whether or not it was litigated must be determined by the injunction decree and the pleadings and records in that action, or both, and, if they are silent upon the question, by extrinsic evidence. It is apparent that the error of the trial court consisted in the fact that it applied to the facts of the case the doctrine of *res judicata,* which obtains where two actions between the same parties are upon the same cause of action, and not where the causes of action are different, as in the case at bar.

The court struck out defendant's evidence with relation to Brockway's ownership of stock of the plaintiff company. This was competent evidence. It tended to show that Brockway, who purchased the stock at the sale, was in reality the plaintiff company —that is, that he owned 196 out of 200 shares of its capital stock, which stood in his name, and that the other four shares were in the name of others, to qualify them to act as members of its board of directors. This evidence was legitimate as bearing upon the question of damages. If, as a matter of fact, Brockway and the plaintiff company were substantially the same, and if, in legal effect, the company at the sale re-possessed itself of this stock by the payment of the amount of the assessment, it

would be an injustice to compel the defendant company to pay plaintiff company the full value of the stock, for, in that case, plaintiff would sustain no such damages.

The judgment of $571.65 under the second cause of action is affirmed, and upon the first cause of action for $4825.36 is reversed, and the cause remanded for further proceedings in harmony with the views expressed in this opinion.    *Affirmed in part.*

*Reversed in part and remanded.*

Chief Justice Gabbert and Mr. Justice Steele concur.

*On Petition for Rehearing.*

Appellee's brief in support of its petition for a rehearing is largely a re-statement of the same arguments made at the original hearing. Nothing new is presented which calls for a change in the opinion, but some additional observations, explanatory of the facts and the particular points now urged, may possibly more clearly show the fallacy and injustice of plaintiff's contentions.

In the original opinion it was stated that the complaint averred that the appellee had received notice of the assessment, for failure to pay which its stock was sold, hence it was a departure in the replication to deny receipt thereof by alleging an omission of the defendant to publish notice of the assessment, as required by the by-laws. Plaintiff now says that no advantage can be taken by defendant of the alleged departure, because the same was waived by its treating such failure as an issue in the case. We were in error in stating that such averment was in the complaint. It is silent in that particular. But the legal effect is the same. The accurate statement is that the complaint did not rely upon, or allege, the failure to give the prescribed notice, and in his own

testimony plaintiff's president acknowledged receipt of personal notice thereof.

We did state in the opinion, and again say, that it was improper for plaintiff, in its replication, to change position and rely upon failure to publish notice of the assessment, after silence upon that point in the complaint. But nothing prejudicial to plaintiff was predicated upon the departure, and defendant was not seeking to avoid the effect of no publication by invoking a rule of pleading that had been violated. We immediately proceeded to add that if such an issue was properly in the case, the plaintiff, for the reasons we then gave, was not in a position to take advantage of the failure. This brings us to a consideration of the point again raised by plaintiff, that the failure to publish notice of the assessment in some newspaper in Grand Junction for one week, was fatal to the assessment and the subsequent sale of the stock for its non-payment.

Counsel cited in his original brief, and again calls to our attention, certain authorities which he says sustain the proposition that, where the by-laws of a corporation require the publication of notice of making an assessment, actual notice thereof will not render an assessment valid that is made without such publication. We did not comment upon these authorities, or question the correctness of the legal propositions advanced, under the facts of those cases, because we were satisfied that they are not applicable to the facts of this case. It is pertinent here to emphasize that plaintiff is not questioning the due regularity of the proceedings relating to the actual sale and forfeiture of stock, which the by-laws prescribe as a remedy to collect delinquent assessments, but the sole grievance alleged is that defendant did not publish notice of an assessment which a by-law directed. The due giving of that notice was not essen-

tial to the validity of the assessment, but must be given after the levy to afford opportunity of payment, which could not be enforced by suit or sale until given or received.

In passing, however, we observe that, in *Lewey's Island R. R. Co. v. Bolton,* 48 Me. 451, which is one of the authorities relied upon by appellee that strict compliance as to notice must be had, the court indicated that the doctrine there laid down was not applicable to a case like that before us. In that case the by-laws of the company required that notices of the time and place of sale should be posted in two conspicuous public places in the city of Calais. The testimony was that they were published in two public places, but the court held that posting notices in a public place, without saying in a public and conspicuous place, as required by the statute, was insufficient, but the court added, and this is the statement to which we have adverted: "Perhaps, if it had been shown that a notice properly signed had been given in hand to defendant, that fact, as to him, might have been sufficient, notwithstanding the defect in proof as to the posting."

At the trial here the secretary of the defendant company testified, and there was no evidence to the contrary, that it has been the uniform practice of defendant since its organization not to publish notice of assessments, but it has relied upon the giving of personal notice, in response to which the plaintiff company and other stockholders have uniformly made payment. The testimony upon this point clearly established, in our judgment, that the company, with the full acquiescence of the stockholders, had given only personal notice of assessments, and thus virtually that portion of the by-law requiring publication thereof for one week in some newspaper in Grand Junction is repealed. The authorities which

we cited clearly sustain the proposition that, since this provision of the by-laws was for the benefit and protection of the stockholders themselves, they might .waive it, and such by-law, as to them, would be repealed by their acquiescence in the uniform practice of the company in disregarding it.

Among the authorities which we cited to the point that actual notice is sufficient is *Railroad Company v. Gaster,* 20 Ark. 455, which is cited with approval by Judge Thompson at 10 Cyc. 498, as taking the sensible view. In that case the act of incorporation provided that the payment of the shares of capital stock shall be made in such sums and at such periods as shall be fixed by the board of directors, provided that sixty days' notice be given of each call, published in at least two newspapers in South Arkansas, and one in the city of Little Rock. The court, by Compton, J., in passing upon this statute, said that the provision was for the benefit of the stockholder, and the object was not only to notify him that assessments had been made, but also to allow sixty days in which to make payment. It appeared that the defendant in that case had received personal notice of the assessment more than sixty days before suit, and was requested to make payment. It also appeared that sixty days' notice was not given by publication in newspapers, as required by the charter, and the question was squarely presented whether the mode of giving the notice, as well as the notice itself, is a condition precedent to the plaintiff's right to recover. The court held that the giving of sixty days' notice was imperative, because it was of the essence of the thing required to be done, but that the mode of doing so is directory, because not of the essence, and held that if the defendant had received actual notice sixty days before the suit was brought, that was sufficient, although no publication

in a newspaper was made as prescribed by the charter. The reasoning of the court is entirely satisfactory to us, and in summing up it said.: "This rule of construction is supported by authority, and certainly no reason can be given why actual notice, in such a case, would not be as good as that of publication, which would be but constructive notice."

The facts in the present case are that the plaintiff company received through the mail actual notice of the levying of the assessment of $.80 per share, and the president of the company testifies that, in the fall of the year, and before the sale of the stock was made, he saw upon the books of the company what he calls the order of rebate, what we called the second assessment of $.65 per share, and it is not material whether the latter was merely a reduction of the first, or an entirely new and different assessment. No claim is made that he and his company did not have actual notice of both for the full time allowed before payment could be lawfully enforced.

In view of these considerations, that the by-law, as to publication, was repealed, by implication, that plaintiff had actual notice, and did not, when actual notice of the assessment was received, object to payment on the ground of a failure of publication, but solely upon the ground, as alleged in the complaint in the first action and repeated in the complaint in the pending one, that the assessment made was illegal because it was for an illegal purpose, we are clearly of opinion that the failure of the defendant company to publish for one week in a newspaper in Grand Junction notice of these assessments was not fatal to the sale.

Appellee further says that the judgment ought to have been affirmed because the defendant, in its answer, admitted the invalidity of the assessment, for failure to pay which plaintiff's stock was sold, and in

support of the contention quotes a sentence from the answer. The answer should be considered in its entirety, and our construction of that pleading is that the defendant did not intend to admit, and, as a matter of law and fact, did not admit, the invalidity of any assessment, except so far, as the court's holding in the first action necessarily implied that it was illegal to the extent that it was made for, or to be devoted to, an illegal purpose. The entire framework of the answer, and the position consistently maintained by the defendant in its pleading and proof, were that only so far as the assessment was to be devoted to an illegal purpose was it adjudged to be invalid. Such, also, was the position taken by the appellee here in its complaints in both actions. The original decree shows upon its face, and it cannot be contradicted by appellee, that there was no decree declaring, and no intention upon the part of the court in such decree to adjudge, the assessment illegal or invalid for all purposes, but the intention was merely to prevent the application of any assessment to the carrying out of the illegal contract which the complaint charged the defendant company was seeking to perform. Moreover, the alleged admission in the answer was clearly intended to be applicable to the original, or first, assessment of $.80 per share, and not to the alleged rebate, or reduction, or what might be called the second assessment, of $.65 per share, for failure to pay which the forfeiture and sale of the stock were made.

Appellee now says that the evidence relating to Brockway's ownership of the stock of plaintiff company, which the court took from the jury after having admitted it, was properly withdrawn because, *inter alia*, it was, if anything, an equitable defense, constituting new matter which should have been affirmatively pleaded in the answer, and as there are

no such affirmative averments in that pleading, the evidence is not admissible under a general denial. This contention comes with poor grace from appellee, and it is difficult to perceive how it can be made in good faith. There were such affirmative averments in the answer when it was filed, and appellee moved to have them stricken, on the ground that the same are irrelevant, redundant and immaterial, and because, if relative at all, they could be proved under the denials of the answer. Certainly, appellee is estopped to be heard upon this point.

Other propositions advanced by counsel for appellee in his present brief have been sufficiently considered, and we think satisfactorily answered, in the original opinion.

Petition for rehearing heard by the court *en banc*, and denied, all the justices concurring.

*Remanded.*