## JOHN W. RAY v. CHARLES JOHNSON.

*Landlord and tenant—Lease—Consideration—Evidence.*

Plaintiff was assignee of a lease in the usual form, and containing no restrictions upon the use of the land, unless implied from a clause reserving to the lessor the right to enter, explore for, dig, mine, and carry away any ores found in or on the land, in which event, if the occupancy for a family residence was rendered impracticable, the lessor was to pay the consequent

damages. The land was platted, and plaintiff leased two lots to the defendant, referring in the lease to the original lease. In a suit to recover the rent, the defendant sought to show that an iron formation ran across the land, including the lots leased to defendant, and the methods generally used in mining such ore; that the land was leased to the original lessee for a family residence, and that the lessor objected to his platting and leasing it for tenement and general purposes. The testimony was offered upon the theory that it tended to limit the right of plaintiff to a use of the premises for the purposes of a residence, and to show that the lease was intended to give the lessee no legal right to cover the land with buildings, or grant the right to others to do so; and that the reservation of the right to mine rendered the lease to defendant worthless, and that it was no consideration for the promise to pay rent. And it is held that the evidence of objections by the original lessor to the platting and leasing of the lots was properly excluded, the rights of the plaintiff being determined by the lease, and not by what the lessor may have subsequently claimed; and that, if all of the proposed evidence had been received, it would not have established the want of consideration claimed.

Error to Marquette. (Stone, J.) Argued November 3, 1893. Decided December 4, 1893.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Hayden & Young,* for appellant, contended:

1. The estate reserved in the mining company from the operation of the lease, being a right to enter upon the surface and dig through as well as to mine beneath it, is inconsistent with the right in the lessee to cover the land, vacant at the time, with buildings; citing *Marvin v. Mining Co.,* 55 N. Y. 538, and cases cited; *Erickson v. Iron Co.,* 50 Mich. 610; *Railway Co. v. Sprot,* 2 McQ. 449.

2. The right to explore for minerals, and to dig in and use the surface, is a larger right than that simply to mine beneath the surface. It cannot be exercised without a destruction of the surface; citing *Ryckman v. Gillis,* 57 N. Y. 68, 75; *Scranton v. Phillips,* 94 Penn. St. 15; *Aspden v. Seddon,* L. R. 10 Ch. App. 394; *Marvin v. Mining Co.,* 55 N. Y. 538.

3. The erection of buildings upon land subsequent to the vesting

of a right to disturb the surface by mining cannot vary the rights of the parties; citing *Rowbotham v. Wilson,* 8 H. L. Cas. 348, 6 El. & Bl. 593, 605.

4. Under a reservation in the original owner of the right to enter and dig in the surface, the owner of the surface has no right to compensation for a destruction thereof, unless it be specially agreed to; citing *Ryckman v. Gillis,* 57 N. Y. 68, 75; *Rowbotham v. Wilson,* 8 H. L. Cas. 348, 6 El. & Bl. 593. See, also, upon this subject, *Erickson v. Iron Co.,* 50 Mich. 610.

*E. E. Osborn,* for plaintiff.

HOOKER, C. J.   The Cleveland Iron Mining Company gave a lease to one Wadsworth of about five acres of land within or adjacent to the city of Ishpeming.   This lease was for 20 years at an annual rent of $50, was dated July 16, 1881, and was an ordinary lease of the premises, without restriction as to use, unless it may be implied, as defendant's counsel contend that it should be, from the following clause, which was a part of the lease, viz.:

"Reserving the right to enter thereon, and to explore for, dig, mine, and carry away any ores thereon or therein found; and if, by any such mining operations, the occupancy of said second party is rendered impracticable for a family residence, said first party shall pay such damage as the parties may agree upon, or as may be awarded by arbitrators mutually chosen, whose decision shall be subject to no revision or appeal."

On September 1, 1881, Wadsworth assigned this lease to his wife, and on December 21, 1885, she assigned it to her father, John W. Ray, who resided with the Wadsworths. The land was afterwards platted into lots and streets, and defendant leased two of the lots for the term of 10 years at an annual rental of $30 for each lot, payable in advance, reference being made to the plat, "to be found at the office of Daniel F. Wadsworth," and to the lease from the mining company, which was recorded, and to whose right it was expressly made subject.   Johnson entered, and commenced the erection of a frame building upon the land, after mov-

ing off a building belonging to Ray, which service, by agreement, paid the first year's rent. Before the new building was completed the defendant moved it from and abandoned the premises, claiming that the mining company intended to commence mining operations upon the tract. Upon the expiration of the year, this action was brought for the second year's rent. A verdict being directed for the plaintiff, the defendant appealed.

The defendant sought to show that an iron formation ran across the property platted, including the premises leased by him, and the methods generally used in mining such iron, and that the land was leased by the mining company to Wadsworth for a family residence, and that the mining company made objections to Wadsworth's platting and leasing it for tenement and general purposes. This evidence was excluded. It was offered upon the theory that it tended to limit the right of Ray to a use of the premises for the purpose of a residence, and exclude the use made of them, and to show that the lease was intended to give the lessee no legal right to cover the land with buildings, or grant the right to others to do so; and that the reservation of the right to mine rendered the lease to Johnson worthless, and that it was no consideration for the promise to pay rent.

The court property excluded the evidence of objections by the mining company to the platting and leasing of lots. Whatever rights the plaintiff had are to be determined by the lease, and not by what the mining company may have subsequently claimed. Furthermore, if all of the evidence offered, as above stated, had been received, it would not have established the want of consideration claimed. The plaintiff had a valuable interest in the premises, the only limitation being the reserved right to mine. Subject to that, he might do anything he pleased with the land. It appears that he did use it, by placing a building upon these

lots in question, besides the family residence mentioned in the lease, which was upon another portion of the premises. Defendant might have erected a building there, and, in fact, did commence one, which he might have completed and used until this time, for aught that appears in this case; and, as there are many other purposes for which the land might have been used, the lease would not have been valueless had the right to erect buildings been expressly excluded.

The defendant's counsel asked the witness Wadsworth the following question, viz.:

"*Q.* Now, was not this lease assigned to Mr. Ray to secure him for an indebtedness which was owed by you to him? (Objected to as immaterial.)

"*Mr. Young:* It is material only in this way: What I am seeking to show is, Mr. Wadsworth was the real owner of this property, and that what he said and did would perhaps have more weight than it would if he was an ordinary agent.

"*Court:* It already appears that he did most of the business, and I think no question is raised but that he had authority. At least they put him on, and proved his authority.

"*Mr. Osborn:* No; no question but what he had authority to do what he did.

"*Mr. Young:* That is, what you have shown he did.

"*Mr. Osborn:* Yes.

"*Mr. Young:* It seems to me, for that purpose it ought to be shown.

"*Court:* If you desire to show particular acts he did about the property.

"*Mr. Osborn:* He asks for the consideration of the transfer from him to Ray.

"*Mr. Young:* As to whether the transfer was security only.

"*Mr. Osborn:* That is, to contradict the terms of a written instrument which has been introduced in evidence.

"*Court:* I think I will sustain the objection. I think it will keep out a certain class of testimony having no business here; and allow you to argue on his acts, of course.

"*Mr. Young:* I will take an exception."

Defendant testified as follows:

"There was a fence around my lot and three other lots. I saw Mr. Wadsworth put a gray team and a cow in there. They came right up from the barn into these lots and pastured. They were going right along while Mr. Ray was there, as long as there was anything for them to get there.

"Q. After that, did you have any talk with Mr. Wadsworth in relation to abandoning this property?

"Mr. Osborn: I object to that.

"Court: I sustain the objection. You may make your offer, Mr. Young.

"Mr. Young: I take an exception.

"Q. Did you, after this, make any arrangement with Mr. Wadsworth by which he agreed to take these lots back for Mr. Ray, and pay you your money, $60?

"Mr. Osborn: I object to that.

"Court: I sustain the objection.

"Mr. Young: I take an exception."

From these offers, and the fact that defendant testified that Wadsworth negotiated the leasing of lots, it is claimed that there was a question to go to the jury upon the theory of a surrender. If the lease was assigned by Mrs. Wadsworth to Ray as security for her husband's debt, it does not tend to establish that Wadsworth was the agent of Ray. The pasturing of cattle, which, at most, is claimed to show a recognition of the rights of abandonment and an occupancy by Ray, is explained by the cross-examination, which shows that they merely came upon the land for want of a fence. Moreover, Mr. Young had stated to the court, in substance, that he did not propose to show that the building was moved under any agreement or arrangement, or that the premises were surrendered under the statute of frauds, but that he did propose to show an abandonment. In the light of this record, we cannot say that the court erred in excluding the testimony offered.

We find no error in the record, and the judgment will be affirmed.

The other Justices concurred.