PATTERSON *v.* BUTTERFIELD.

1. LANDLORD AND TENANT—AMBIGUOUS LEASE CONSTRUED MOST FAVORABLY TO LESSEE.

It is a rule of construction in cases of ambiguity that the terms of leases will be construed most favorably to the lessees.

2. SAME—RULES OF CONSTRUCTION APPLICABLE TO DEEDS MAY BE APPLIED TO LONG-TERM LEASES.

In leases for 99 years, which for practical purposes involve substantially the same rights as would be incident to the sale of the land, the rules of construction applicable to deeds may be applied.

On the question of application of parol evidence rule as applied to lease, see annotation in 25 A. L. R. 788.

3. DEEDS—RESTRICTIONS CONSTRUED STRICTLY AGAINST GRANTORS.
  Restrictions in deeds will be construed strictly against the grantors and those claiming to enforce them, and all doubts resolved in favor of the free use of the property.

4. SAME—GRANTS MUST BE CONSTRUED REASONABLY.
  It is a rule of construction that all grants must be construed reasonably and in the light of surrounding circumstances.

5. SAME—OBJECT OF CONSTRUCTION IS TO ASCERTAIN INTENTION OF PARTIES.
  The object to be arrived at by courts in construing deeds or other contracts is to ascertain clearly the intention of the parties.

6. EVIDENCE—PAROL EVIDENCE INADMISSIBLE TO VARY TERMS OF WRITTEN LEASE.
  The intent of the parties to a written lease is to be found by an examination of the lease, and parol evidence of the understanding of the parties is inadmissible to vary its terms.

7. LANDLORD AND TENANT—LEASE—CONSTRUCTION OF 99-YEAR LEASE.
  Under a lease for 99 years, providing that the lessee should within 10 years remove the buildings on the premises and erect a building of modern construction adapted to certain specified purposes, the lessee was not required to erect the new building immediately on removing the old one, short of the 10-year period, where the lease did not so provide.

8. SAME—LESSEE ENTITLED TO SUBLET IN ABSENCE OF RESTRICTIONS.
  In the absence of statutory or contractual restrictions, a lessee for years may assign or sublet his leasehold interest without the lessor's consent or an express provision in the lease giving him such right.

9. EVIDENCE—EXTRINSIC CIRCUMSTANCES MAY BE CONSIDERED IN CONSTRUING AMBIGUOUS LEASE.
  To the extent that it is justified by ambiguity, extrinsic circumstances may be considered for the purpose of aiding the court in arriving at a proper construction of a lease, but that does not justify a construction which alters or adds to its terms.

10. LANDLORD AND TENANT—LESSEE MAY SUBLET IN ABSENCE OF RESTRICTION.
  A lessee under a 99-year lease, who was bound to remove the present buildings on the premises and erect a new one suit-

able for certain specified purposes within 10 years, had the right to sublet the premises and erect a building for other than the stipulated purposes within the 10-year period, in the absence of any restriction in the lease against subletting.

Appeal from Saginaw; Browne (Clarence M.), J. Submitted April 26, 1928. (Docket No. 122, Calendar No. 33,577.) Decided October 1, 1928.

Bill by Howard F. Patterson and others against Walter S. Butterfield and another to enjoin the violation of a lease. From a decree for plaintiffs, defendants appeal. Reversed, and bill dismissed.

*Raymond R. Kendrick* (*Weadock & Weadock,* of counsel), for plaintiffs.

· *Beach & Beach,* for defendants.

NORTH, J. The plaintiffs leased to the defendant Walter S. Butterfield lots Nos. 5 and 6 of block No. 57, Hoyt's plat of the city of East Saginaw, for a term of 99 years, commencing January 1, 1926. The lease contains the following:

"That as a further additional rent for said premises, for said term, said lessee does hereby covenant and agree that he will, within a period of ten (10) years from and after the commencement of this lease, and not later than December 31, 1935, remove the building now on said premises and will erect or cause to be erected on said demised premises a building of first-class modern fireproof construction, * * * which building shall have a foundation adequate for a building of not less than five (5) stories in height, and said building shall cover not less than sixty per cent. (60%) of the premises herein described, with reasonable allowance for space for light and air and shall be adapted for mer-

cantile, apartment, store, halls, hotel, or theater pur-
poses, or any combination of any one or more of
such purposes, as may be selected and designated by
the lessee.

"The said lessee further covenants and agrees
that the total cost of said building to be erected shall
not be less than one hundred twenty-five thousand
dollars ($125,000).   *   *   *

"Before any contracts shall be let or work com-
menced for the erection of said new building said
lessee covenants and agrees to furnish to lessors
competent detailed plans and specifications of said
new building prepared by a competent, reputable
and licensed architect then employed by or in the
employ of the lessee, together with an estimate of
said architect of the cost of such building, which said
plans and specifications shall be and become the
property of said lessors.

"Lessee further agrees that said new building
shall be well and substantially built and erected and
constructed and finished in a good, thorough and
workmanlike manner.   *   *   *

"It is mutually agreed that the lessee will not
materially alter or tear down or destroy any build-
ings at any time upon said demised premises without
the consent in writing of the said lessors except as
herein otherwise expressly provided."

The lessee at the time of the negotiation and ex-
ecution of this lease was and now is extensively
engaged in theatrical business in various cities in
Michigan. In consummating this transaction all
parties concerned contemplated that the lessee
would construct on the leased premises a building
which would be used in part at least as a theater;
although the lease rendered it possible to use such
new building for other than theater purposes, *i.e.*,
"for mercantile, apartment, store, halls or theater
purposes, or any combination of any one or more
of such purposes." Specific provision was made

that the lessee should construct such building within 10 years from the date of the lease. At the beginning of the lease there was a structure on the land described in the bill of complaint as "an old two story building." This was removed by the lessee early in May, 1926. At that time he was preparing to proceed at once with the erection of the new theater building; but soon thereafter certain changes, which we need not here detail, came about which affected the theatrical situation in Saginaw and caused the lessee to abandon for the time being the construction of the new building. In October, 1926, he entered into a lease with the defendant Carl Proestel, under which the latter was to use the premises for a gasoline and oil station. This lease was for five years with the privilege reserved to the lessor to terminate it after one year. Proestel began the construction of the gasoline station, referred to in the bill of complaint as "a small, temporary filling station building;" and thereupon the plaintiffs instituted this suit. The sole relief sought is an injunction against the construction on the demised premises of "any new building or other structure except as specifically provided for in said indenture of lease between said plaintiffs and said defendant Butterfield."

It is contended by the plaintiffs that the provisions of this lease as to the buildings which may be erected on the premises are restrictive in character; and, as stated in their brief:

"His (Butterfield's) option was alternative and indivisible to either leave the old building upon the premises or remove the old building and build the described theater building. * * * By tearing down the old building lessee made his election and bound himself to proceed with reasonable speed in

the erection of the theater building as absolutely as though he had singly and simply covenanted and agreed to erect the specified new building.''

The construction insisted upon by the defendant Butterfield is that, during the 10-year period, or until he undertakes the construction of the building specified in the lease, he has the right to the use of the demised premises free from the restrictions insisted upon by the plaintiffs; and that he will have fully performed the terms of his lease in this particular if within the 10-year period he causes to be erected on the leased land a building of the type specified.

The controversy necessitates a construction of this phase of the lease. We are of the opinion that the plaintiffs' contention is not tenable. It is a rule of construction in cases of ambiguity that the terms of the lease will be construed most favorably to the lessee. *Park Building Co.* v. *Yost Fur Co.,* 208 Mich. 349. In leases of this character, which for practical purposes involve substantially the same rights as would be incident to the sale of the land, the rules of construction applicable to deeds may be applied:

''Restrictions in deeds will be construed strictly against the grantors and those claiming to enforce them, and all doubts resolved in favor of the free use of the property.'' *Austin* v. *Kirby,* 240 Mich. 56; citing *James* v. *Irvine,* 146 Mich. 376.

''It is a rule of construction that all grants must be construed reasonably and in the light of surrounding circumstances.'' *Kendrick.* v. *Louk,* 175 Mich. 130; citing numerous Michigan cases.

''The object to be arrived at by courts in construing deeds or other contracts is to ascertain clearly the intention of the parties.'' *Smith* v. *Smith,* 71 Mich. 633.

But in applying these rules, due regard must be had for the rights and obligations of the respective parties as set forth in the express terms of the instrument.

"The intent of the parties to a written lease is to be found by an examination of the lease, and parol evidence of the understanding of the parties is inadmissible to vary its terms." *Meredith* v. *McCormick,* 208 Mich. 563 (8 A. L. R. 669).

The question of primary importance here is whether the plaintiffs are right in asserting that by removing the building which was on the premises when leased, the lessee elected to proceed forthwith to erect the new building, although the 10-year period expressly provided in the lease had not expired. This contention amounts to saying that in case the maintenance of the old building had proven unprofitable to the lessee, he could not have removed it and allowed the demised premises to remain vacant for any portion of the 10-year period. There is no such provision in the lease; and as will appear from portions of plaintiffs' testimony hereinafter set forth, the reason for granting the 10-year period within which the lessee might erect the new building is wholly inconsistent with such a construction. The purpose of granting the lessee the specified time within which to perform this part of the lease was that he might have ample opportunity to finance the undertaking and that he might not be compelled to proceed summarily in the face of adverse conditions. One of the plaintiffs, Howard Patterson, after stating that six years of correspondence preceded the consummation of this lease, continued to testify as follows:

"When the first lease was to be drawn we offered him two years (within which to construct the new

building), and when the lease was drawn it became five, and finally Mr. Butterfield wanted ten years, but he explained it was merely for financial people and floating bonds, and not to hold the business up. Finally the lease was prepared so he didn't have to build (for) ten years.''

Another of the plaintiffs, Russell Patterson, testified:

''As I remember it, the lease was drawn with a five-year building clause in there, and Mr. Butterfield insisted upon ten, and we compromised that the ten years go into the lease in order to safeguard against any trouble which might arise with finances or anything else which might come up.

''*Q.* And in executing this lease he (Butterfield) insisted upon the ten years in which to build?

''*A.* He did.''

This lease was carefully prepared by able attorneys who represented the respective parties. If the lessors had in mind that it would be to their advantage to require the lessee to construct the new building as soon as he removed the one then on the premises or within a limited time thereafter, it would have been a simple matter to have so provided in the lease; but there is no such provision. And such a construction ought not to be placed on this lease because it would not only add to the contract a provision not within its terms, but it would give to it a meaning in direct conflict with the express provision whereby the lessee is given 10 years within which to erect the new building. The removal of the old building was in part performance of the lease; but there is no logical reason for saying that because the lessee has performed to this extent he must ''proceed with reasonable speed to the erection of the theater building;'' and thus com-

plete performance forthwith. The contract does not so provide. If instead of subletting the premises, Mr. Butterfield had caused the foundation of the new building to be constructed and had then ceased building operations, it would clearly be contrary to all rules of construction to hold that he thereby lost the benefit and protection of the express terms of his contract whereby he was given 10 years within which to complete the structure, and therefore, he should proceed at once to the completion of the new building. These two provisions of the lease are not thus interdependent; and the removal of the old building was not an election by the lessee which bound him to proceed at once with the erection of the new one.

With the lease thus construed, it becomes pertinent to determine whether Mr. Butterfield had the right to sublet to Proestel. So far as the issues in this case are concerned, there are no restrictions in the lease to Butterfield as to the use of the premises except such as are expressed in or implied from his covenant to erect within 10 years a building "adapted for mercantile, apartment, store, halls, hotel or theatrical purposes," etc. The restrictions clearly apply only to the building that the lessee contracted to construct within the time limited in the lease. The lessors covenanted that the lessee should "peaceably have, hold and enjoy" the premises in the meantime. Not only is there no provision in the lease against subletting, but the right to sublet is clearly implied by the terms of the instrument. In the absence of statutory or contractual restrictions, a lessee for years may assign or sublet his leasehold interest without the lessor's consent or an express provision in the lease giving him such right. 35 C. J. p. 975, citing *Ray* v. *Johnson*, 98 Mich. 34.

In plaintiffs' brief much stress is placed upon the fact that they own five other parcels of land in the immediate vicinity of that involved in this litigation; and the defendant Butterfield urged as an inducement to the consummation of this lease that the value of these other holdings would be increased substantially by the erection of the new theater building; and it is also claimed that the use of this land for a gas and oil station will be detrimental to plaintiffs' other properties.  The importance of this latter consideration is somewhat minimized by the fact that the defendant Butterfield also has a 99-year lease on one of these other parcels and by the further fact, disclosed by plaintiffs' testimony, that there are at least four other gas filling stations in the vicinity.  To the extent that it was justified by ambiguity of the lease, the extrinsic circumstances mentioned might be considered for the purpose of aiding the court in arriving at a proper construction of the lease; but that cannot be held to be a justification for a construction which alters or adds to the terms of the instrument.  6 R. C. L. p. 839.  Authorities need not be cited which hold that the terms of a written lease or any other written contract cannot be varied by parol evidence.  If, because of their interests in other nearby properties, the plaintiffs desired to restrict the use to be made of these premises, it should have been specifically so provided in the lease.  The record discloses that the building which was on these premises and the business which was there conducted did not materially add to the value of plaintiffs' other properties.  One of their witnesses testified:

"I remember the kind of buildings that were on lots 5 and 6, block 57.  One was an old building, braced up, and was in as good condition at the time

it was torn down as any building could be of that age. It was a building 35 or 40 years old, used for a blacksmith shop, a tire repair, battery repair and printer's shop.''

As before stated, by their lease the plaintiffs expressly gave the defendant Butterfield 10 years in which to perform the requirement which would enhance the value of plaintiffs' other properties; and it would seem to follow that they should not be heard to complain because their lessee, who is paying them an annual rental of $2,400, in the meantime is making a legitimate use of the demised premises. It is self-evident that the immediate construction of the new theater building would to some extent benefit plaintiffs' other properties, but that is not a reason for changing the express terms of the lease. The defendant Butterfield had the right to sublet to Proestel.

The decree of the lower court holding otherwise must be reversed, and a decree may be taken dismissing the bill of complaint, with costs to the appellants.

FEAD, C. J., and FELLOWS, WIEST, CLARK, MCDONALD, POTTER, and SHARPE, JJ., concurred.