No. 14,283.

ESTATE OF YOUNGQUEST.

YOUNGQUEST, ADMINISTRATRIX *v.* YOUNGQUEST.
(76 P. [2d] 1117)

Decided February 28, 1938.

106

Mr. M. B. Waldron, Mr. Vance R. Dittman, Jr., for plaintiff in error.

Mr. Benjamin Harwit, Mr. L. Bernard Davis, for defendant in error.

*In Department.*

Mr. Justice Knous delivered the opinion of the court.

William C. Youngquest departed this life December 21, 1935. May Youngquest, plaintiff in error, was appointed administratrix of his estate by the county court of the City and County of Denver December 27, 1935. In the American National Bank of Denver at the time of Youngquest's death was a checking account of $5,800, which, because of certain circumstances to be mentioned, was carried on the bank's records as the joint account of deceased and Bell Youngquest, the defendant in error, to whom we shall refer as claimant. Shortly after her appointment the administratrix, in an ex parte proceeding, secured from the county court an order restraining the American National Bank from paying out or otherwise disposing of any of the funds in the mentioned account, until further order of court. The claimant then filed a petition in the county court praying that the restraining order be dissolved and the bank ordered to pay her the funds in said account, asserting as her right thereto that on November 22, 1935, the deceased had changed his then personal bank account into a joint account in his name and that of claimant as joint tenants with right of survivorship, and that upon the death of Youngquest, claimant, as the survivor, became entitled to all of the funds in the account. By way of answer the administratrix pleaded that on the date of the alleged change in the account the deceased was mentally incompetent and was unduly influenced and coerced by claimant into changing the account into the form in which it stood at the time of his death. The county court found in favor of claimant, but upon appeal, the district court held with the administratrix, and, without a written opin-

ion, we affirmed that judgment. *Youngquest v. Youngquest,* 101 Colo. 43, 69 P. (2d) 1119.

During the pendency of the proceedings last mentioned, the claimant on December 9, 1936, filed a claim against the estate—the basis of the controversy now before us—demanding $1,800 alleged to be her private funds which she asserts were deposited by her on December 13, 1935 in the mentioned account in the American National Bank; also claiming $3,107.50 for services said to have been performed by her for deceased in connection with the operation of a restaurant at Brighton, Colorado, and $67.50 advanced by claimant to pay certain taxes for the deceased. The county court denied the claim, except as to the tax payment, which since has not been involved in the controversy. Upon appeal the district court allowed the item of $1,800 as a preferred claim against the estate and denied the claim for services.

The administratrix by appropriate assignment of errors asserts that the $1,800 claim is barred by reason of the former judgment in *Youngquest v. Youngquest, supra,* under the principle of res judicata and estoppel. Error also is assigned to the trial court's action in ordering that the $1,800 be paid as a preferred claim against the estate.

█ Claimant assigns cross-errors to the court's failure to allow interest on the $1,800 claim and in denying the claim for wages. The first of these cross-errors, relating to a matter of law concerning the propriety of allowing interest on the claim, will be discussed later. The other, directed at issues of fact determined by the trial court, cannot be considered because of the failure of claimant to file a motion for a new trial or secure an order dispensing therewith. Rule 8. *Chain O' Mines v. Lewison,* 100 Colo. 186, 66 P. (2d) 802.

█ The conclusive effect to be accorded a judgment rendered in a former proceeding, as res judicata or as an estoppel, must always be considered in connection with

the facts of the particular case. *Johnson v. Johnson,* 20 Colo. 143, 36 Pac. 898; *Grand Val. Irr. Co. v. Fruita Imp. Co.,* 37 Colo. 483, 86 Pac. 324.

The evidence in support of the $1,800 claim discloses that for a considerable period prior to December 11, 1935, deceased owned and operated a restaurant in Brighton, Colorado. The claimant, in some capacity which is immaterial here, for a number of years had participated and assisted in the carrying on of this restaurant business. On the date last mentioned the deceased executed and delivered to the claimant a bill of sale for the restaurant. On the second day following she sold the restaurant business to a third party for $1,800 and received therefor his check payable to herself. With this check claimant immediately purchased a certificate of deposit in the Brighton State Bank in the same amount, likewise payable to herself. She then proceeded to Denver, and having endorsed the $1,800 certificate, deposited it in the Youngquest account in the American National Bank.

The validity of the bill of sale from Youngquest to claimant was not questioned by the administratrix, nor are the facts relating to her sale of the restaurant, her receipt of the check payable to herself, the purchase of the certificate and the deposit of this item in the Youngquest bank account controverted.

It thus appears that unless the doctrine of res judicata or estoppel is applicable to the present proceeding, the claimant conclusively established a claim for $1,800 against the estate.

In the former proceeding claimant based her right of recovery upon her survivorship of a joint tenancy. As the foundation of her case she offered in evidence what is designated as a signature card purporting to have been signed by the deceased and herself whereby it was alleged the joint tenancy status relied upon was created. At that time, November 22, 1935, there was in said account $3,500. Through an officer of the bank claimant identified

the deposit slips showing the $1,800 deposit here under scrutiny and a later $500 deposit, both showing deposit in the account of "W. C. Youngquest." The last mentioned deposits totalling $2,300, added to the original $3,500, accounts for the $5,800 in the bank at the time of decedent's death. In the former case no evidence was introduced showing the origin of the $1,800 deposit. The record there is entirely silent as to the sale of the restaurant by the claimant, the receipt of the check payable to her therefor, and the purchase of the certificate of deposit in her name. A great part of the testimony related to the mental condition of the deceased, the marital status of both parties to the proceeding, and the relations of the claimant and deceased as they bore upon the coercion and undue influence allegedly exercised by her. It thus is apparent that the question of the claimant's right to the $1,800, because of her original ownership of this sum when it was deposited in the decedent's bank account, the basis of the present proceeding, was not in fact litigated in the former case where the issue involved and determined was the status of the bank account as being a joint or individual account.

But, says the administratrix, even if in fact the issue involved in the present proceeding was not litigated in the first case, it could have been under claimant's allegation therein that the restraining order against the bank "has deprived this petitioner of property lawfully belonging to her," by which it is said the ownership of the fund, and every part thereof, was put in issue, and under which claimant should have advanced all evidence and theories of ownership, and having failed to do so, by the adverse judgment as to her right to the whole fund, she now is precluded from asserting a right to any part thereof. This rule, recognized in proper cases, is rendered inapplicable by the circumstances here. The principle contended for is controlling where the second action is based upon the *same claim* as was asserted in the first,

but where the second proceeding is based upon a *different claim,* only matters *actually litigated* in the first action are concluded. This distinction was well pointed out by this court in the case of *Grand Valley Irr. Co. v. Fruita Imp. Co., supra,* where at page 500 it is said:

"The leading case on this general subject is *Cromwell v. County of Sac,* 94 U. S. 351. It was there said that the difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action for the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action, is this: In the former, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It concludes the parties as to every matter which was offered and received to sustain or defeat the claim or demand, and as to every other substantial matter which might have been offered for that purpose; but where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters actually litigated and determined, and not what might have been. The same rule is found in *Davis v. Brown,* 94 U. S. 423, and *Russell v. Place, Ibid.* 606." As in that case, the concluding sentence of the foregoing statement contains the rule which determines the issue here. The cause of action in the former case was based upon the alleged existence of a joint bank account to which claimant asserted a right under the doctrine of survivorship. The present cause of action is based upon her alleged absolute individual prior ownership of the $1,800 at the time it was deposited in the decedent's bank account and she proceeds as a creditor; therefore, we must conclude, as did the district court, that the claimant was not precluded by the former judgment from prosecuting the claim for $1,800 now before us. The rule we have applied also was held to be controlling in the cases of *Ornauer v. Penn Mutual Co.,*

52 Colo. 632, 123 Pac. 650, and *Fehringer v. Martin Drug Co.,* 56 Colo. 445, 138 Pac. 1007.

In support of her position that the first judgment is conclusive the administratrix stresses the fact that three of claimant's exhibits were received in evidence in both cases and on this premise argues that both judgments are based on identical evidence. The fallacy of this argument is clear when the records are examined. The signature card in the form of two exhibits was admitted in evidence in the first trial to support claimant's unsuccessful primary contention that a joint account was created thereby, in the last, not to establish this precluded issue but, secondarily, to explain claimant's action, otherwise not understandable, in depositing her private funds in the account of another. The other exhibit—the deposit slip for the involved $1,800—was received in the prior trial for the incidental purpose of showing the condition of the account at the time of Youngquest's death, without reference to who made the deposit and in the second to substantiate the essential fact that the deposit was made by claimant in decedent's account. It thus is manifest that these exhibits were admitted for distinct and different purposes, as distinguished from the same purpose, in the respective trials. The ingenuous argument of administratrix to the effect that since the *whole* account was involved in the first suit, the claimant now is estopped from asserting, under any theory, a claim to a *part* of the account, may be answered with a quotation from the case of *Grimes v. Barndollar,* 58 Colo. 421 (148 Pac. 256), where at page 439, we said: ''We are not impressed with the contention that because the plaintiff instituted another action, wherein upon other grounds she made claims to the entire estate of Mr. Hall, (which suit was thereafter dismissed) that her position therein was inconsistent with her claim here, to the extent that it would estop her from prosecuting this suit. No authorities have been cited which hold that the owner of

property may lose title thereto by making claim to other property along with it. Had the wife of the deceased made claim to his entire estate as sole heir at law in a suit wherein it developed that he had children living by a former wife, this would not estop her from making the contention that the husband, during his lifetime had made her a gift *inter vivos* of certain personal property found in her possession after his demise, and for that reason that it was not a part of his estate. The same principle is applicable here.''

In this connection, by way of illustration, it may be added that it would be inconceivable for a court to hold that a widow would be estopped from claiming her statutory distributive share of a bank account of her deceased husband because she previously had unsuccessfully asserted ownership to the entire account as a survivor of an alleged joint tenancy arrangement with respect thereto. The administratrix also overlooks that in the proceeding before us the claimant seeks to impose no specific lien on the bank account and that she seeks recovery from the assets of the estate the same as any other creditor of the statutory class into which her demand falls.

As has been mentioned, claimant assigns cross-error grounded on the refusal of the trial court to allow her interest. Without determining or discussing when or under what conditions interest may be allowed on claims against the estate of a decedent, it is sufficient to say that in this case claimant is entitled to no interest prior to the time her claim ripened into a judgment under section 204, chapter 176, C. S. A. '35. Thereafter the judgment bears interest under section 2, chapter 88, C. S. A. '35. It is not even contended that decedent ever agreed to pay interest on the $1,800. Unquestionably it was not a loan within the meaning of section 1, chapter 88, supra, nor was it ''money received to the use of another and retained without the owner's consent, expressed or im-

plied, from the receipt thereof,'' one of the prerequisites to the allowance of interest under section 2, supra, since claimant of her own volition deposited this money in the account of decedent and never even suggested its return in his lifetime.

■ ■ The trial court allowed the claim for $1,800 as a *preferred* claim. Under our statute relating to classification of claims, section 195, chapter 176, C. S. A. '35, no such appellation as a *preferred claim* appears. However, it is evident from the record that the court intended to allow the claim as one of the first class upon the theory that the decedent held the $1,800 as trustee for claimant. Whatever may be the situation in this respect, it is certain the claim should not have been accorded any preferred status, since it was not filed within six months after the granting of letters of administration, such letters having been issued December 27, 1935, and the claim not having been filed until December 9, 1936. Definitely controlling are the cases of *Nelson v. Nelson,* 72 Colo. 20, 209 Pac. 810, and *Nelson v. National Bank,* 72 Colo. 23, 209 Pac. 811, wherein this court determined under the statute (sections 195 and 199, chapter 176, supra) that preference in allowance of claims depends upon filing within the six months period. If filed thereafter, and within one year, the preference is lost and the claim falls within the fifth class.

Except as to the classification of the claim, the judgment is affirmed. The district court is directed to correct its judgment so as to designate the allowed claim as being of the statutory fifth class. Each party shall pay one-half the costs in this court.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE BAKKE concur.