**D. A. C. URANIUM COMPANY, a corporation, Plaintiff,**

v.

**Robert BENTON, Richard Brady, and Victor C. Herlacher, Defendants.**

**Civ. A. No. 5368.**

United States District Court
D. Colorado.

Dec. 28, 1956.

Grant, Shafroth & Toll, Erl H. Ellis, Denver, Colo., for plaintiff.

Boyle & Witty, John M. Boyle, Salida, Colo., and Robert B. Keating, Denver, Colo., for defendants Robert Benton and Richard Brady.

John R. Wall, Pueblo, Colo., for defendant Victor C. Herlacher.

KNOUS, Chief Judge.

This matter arises upon the complaint of the plaintiff seeking declaratory and injunctive relief against the defendants. Jurisdiction of this Court was founded upon diversity of citizenship. Trial of the issues was had to the Court, and the matter now rests for final disposition.

A chronological summary of the facts as disclosed by the record of the action and by the testimony given at the trial is as follows: During July, 1955, the defendant Benton was in the employ of the defendant Herlacher who at that time was operating certain mining property not material here. Benton, with the defendant Brady, was then in the process of discovering and locating certain other mining claims known as the "Lightning Group," such claims being located in Fremont County, Colorado.

and being the subject matter of this action. On the basis of a verbal agreement between Benton and Herlacher, the latter moved certain of his equipment upon the "Lightning Group" claims and commenced exploratory work and work preparatory to mining operations thereon.

Thereafter, on August 1, 1955, Herlacher entered into an agreement with Benton and Brady, as follows:

"Agreement entered into by and between Victor C. Herlacher (leasee) and Richard Brady and Robert Benton (leasors).

"1. Leasors to retain 5% royalty on net mill returns and 5% of all bonus except freight bonus.

"2. Leasors to retain the development bonus.

"3. If the percentage of ore increases in value ⅓ above original shipment, leasors are to retain 10% after the first year.

"4. Lease to continue indefinitely as long as it continues six months of each year.

"5. This agreement concerns all mining claims situated in Section #11, Township #47, Range #11, Fremont County. This [these] claims are known as the lightning group."

The instrument was signed by the respective parties and recorded on August 18, 1955 in Fremont County. It is admitted that with the exception of paragraph 2 of the instrument, the defendant Benton dictated the document which was transcribed concurrently into its longhand form by a man accompanying Herlacher. Some time between August 10 and 14, 1955, Herlacher presented to Benton and Brady a formal mining lease prepared by an attorney, bearing date of August 1, 1955. The parties could not agree on this instrument, and it was therefore never executed.

On August 16, 1955 Location Certificates for Lightning Claims numbers 1 through 7 were filed of record in Fremont County. Each stated the respective lode to be discovered and located on August 9, 1955. A location certificate for Lightning number 8 was recorded September 23, 1955, and stated the date of discovery and location as August 9, 1955. These eight claims constitute what may be designated as the "Lightning Group." Brady and Benton are designated in each as the locators, but the certificates were prepared by a surveyor who affixed thereto the signatures of the two defendants.

About this time there arose some controversy between Herlacher and Benton and Brady over possession of the claims, and the former instituted an action in the District Court of Fremont County, Colorado, against the latter two, such action being numbered 7434 in that Court. The complaint in that action, hereinafter referred to as the Fremont County action, was filed August 19, 1955, and set forth the agreement hereinabove quoted, and alleged the interference by Benton and Brady with Herlacher's possession of the claims, and prayed for a declaration of the validity of the "lease" and for an injunction against Benton and Brady restraining them from any interference with Herlacher's possession of the claims. On the same date a temporary restraining order was issued by that court restraining Benton and Brady

"from in any manner interfering with plaintiff from operating the mining properties mentioned in the verified complaint herein and that said defendants be restrained from selling or conveying plaintiff's interest in said properties or the mining machinery and equipment or in any manner interfering with plaintiff's employees."

This restraining order on August 25, 1955, by stipulation was continued operative until further order of the court. On March 30, 1956, the court, acting upon the stipulation of counsel for the respective parties, dismissed the action with prejudice to plaintiff. Subsequently, the court denied a "Motion to Vacate and Set Aside Stipulation for Dismissal" filed on behalf of the plaintiff in that action, such denial being the subject of a

review now pending in the Colorado Supreme Court.

Going back to the events of the summer and fall of 1955, the next occurrence material here was the execution on September 24, 1955, of a mining lease involving the "Lightning Group" from Herlacher, as lessor, to the plaintiff, D. A.C. Uranium Co., as lessee. The agreement was recorded October 10, 1955. The plaintiff here, as lessee under this agreement, went into possession on the day the instrument was executed, the defendants Benton and Brady receiving notice of such possession at its commencement.

D.A.C. remained in possession until the advent of winter weather forced it to close down operations on December 9, 1955. During that time it began mining operations and made further exploratory progress. The temporary restraining order in the Fremont County action against Benton and Brady having been dissolved on March 30, 1956, with the order dismissing that action as aforesaid, they returned in early April to the property and allege its repossession and consequent eviction of D.A.C. through their acts of replacing the plaintiff's signs with their own and by what may be termed "rummaging around" the property. This situation continued until early May when D.A.C., through its contractor, returned to the claims to begin spring operations. Disagreement between the plaintiff and the defendants Benton and Brady as to the right of possession brought on the instant action, which was begun by the plaintiff's complaint, filed May 14, 1956. On the same day a temporary restraining order was issued by this Court restraining the defendants from interfering with the plaintiff's possession of the "Lightning Group", and such restraining order by stipulation still remains in force and effect.

Thereafter, the plaintiff, through its contractor, worked the "Lightning Group" up until July, 1956. It has made two shipments of ore from the property, but the Atomic Energy Commission, having been advised of the instant litigation, has withheld any payments.

The plaintiff seeks a declaration of rights in the property, i.e., that Benton and Brady were possessors of the "Lightning Group" claims when they leased them to Herlacher, who in turn subleased or assigned his interest to the plaintiff, who is now in rightful possession of the property; and, further, it seeks a permanent injunction against the defendants Benton and Brady from interfering with its rightful possession. The defendants Benton and Brady allege that at no time was their interest in the "Lightning Group" leased by them to Herlacher, consequently the latter had nothing to give to the plaintiff, and that, therefore, they are the rightful owners of, and should be put in possession of the "Lightning Group". In reality, the defendant Herlacher, is allied with the plaintiff.

The Court is faced at the outset with the serious question raised by the defendants Benton and Brady in averment of res judicata. They allege that the dismissal with prejudice of the Fremont County action was in effect an adverse holding as to Herlacher's right of possession under the August 1, 1955 agreement, and therefore, this plaintiff, who is in privity with Herlacher, is either estopped or barred from relitigating the validity of Herlacher's possession under the August 1, 1955 agreement, which fact the plaintiff must affirmatively show to successfully support its own right under its agreement of September 24, 1955 with Herlacher.

■ There is no question but that the plaintiff is in privity with Herlacher as a successor in the latter's property interest.

While there is no formal proof of the fact contained in the record here, there is no controversy but that a review by writ of error is now pending in the Colorado Supreme Court from the order of dismissal with prejudice in the Fremont County action. From this situation there arises the immediate question

of whether or not a judgment from which a review is pending is of the requisite finality to be available to support a defense of res judicata. Among the different jurisdictions there is a decided split of authority on the question. See Coppedge v. Clinton, 10 Cir., 1934, 72 F. 2d 531, 534–535, and cases cited therein, and annotation in 9 A.L.R.2d 984, et seq. In the instant suit, the answer must be found in the decisions of the Colorado Supreme Court. Coppedge v. Clinton, supra.

The question in Colorado has apparently never been finally determined. At 9 A.L.R.2d 996, the Annotator has this to say:

"The question discussed in this section has not been squarely decided in Colorado. It seems that the courts lean toward the rule stated herein. [pending of an appeal from judgment prevents its operation as res judicata]

"In Sylvester v. J. I. Case Threshing Machine Co., 1912, 21 Colo.App. 464, 122 P. 62, the court stated that the cases of Glenn v. Brush, 1876, 3 Colo. 26, and Denver & R. G. R. Co. v. Crawford, 1888, 11 Colo. 598, 19 P. 673, appear to sustain the proposition that a judgment cannot be pleaded as a bar while an appeal is pending therefrom and undetermined at the time of the trial of the second action. However, neither of the cases involves a proposition of res judicata. The former case involves the question whether a judgment from which an appeal is pending can be introduced as evidence of title in an action between parties other than those participating in the action in which the judgment had been rendered; and the latter case involves the question whether a judgment for double damages must be reversed when the statute upon which the action is founded was repealed pending appeal from such judgment.

"Moreover, the actual holding in Sylvester v. J. I. Case Threshing Machine Co., Colo., supra, was that although it might not have been permissible for the defendants to plead a former judgment pending an appeal as a bar to a second action, they certainly were entitled to plead the matters of defense which were set up and argued in the former action."

To these authorities may be added North River Ins. Co. of City of New York v. Militello, 1937, 100 Colo. 343, 67 P.2d 625.

If the determination of the issue presented here rested upon this indefinite Colorado rule, this Court would follow the suggestion of Ray v. Hasley, 5 Cir., 1954, 214 F.2d 366, and defer any ruling until Colorado's high court had passed upon the validity of the dismissal order in the Fremont County action.

The same course would be pursued if it were necessary to base the holding here upon the substantive principles of res judicata. However, as will later appear, the Court is of the opinion that other factors are decisive of the res judicata question and so will proceed with its disposition.

The doctrine of res judicata embodies two main principles: a) bar by former judgment, and b) conclusiveness of judgment. By the former, the parties are barred from relitigating in a subsequent suit on the same cause of action any matter which was or could have been litigated in the prior action between them which resulted in a final judgment. By the latter, the parties are estopped in a subsequent action from relitigating any matter which was actually litigated and precisely determined in a prior action between them resulting in a final judgment whether the two causes of action be the same or different. Henderson v. United States Radiator Corporation, 10 Cir., 1935, 78 F.2d 674, certiorari denied 296 U.S. 635, 56 S.Ct. 157, 80 L.Ed. 452; Beck v. Hill, 10 Cir., 1937, 91 F.2d 75; Viles v. Prudential Ins. Co. of America, 10 Cir., 1941, 124 F.2d 78, certiorari denied 315 U.S. 816, 62 S.Ct. 906, 86 L.Ed. 1214; Happy Elevator No. 2 v. Osage

Construction Co., 10 Cir., 1954, 209 F.2d 459; Grand Valley Irrigation Co. v. Fruita Imp. Co., 1906, 37 Colo. 483, 86 P. 324; In re Youngquest's Estate, 1938, 102 Colo. 105, 76 P.2d 1117; Hickey v. Anheuser-Busch Brewing Ass'n, 1906, 36 Colo. 386, 85 P. 838; Newby v. Bock, 1949, 120 Colo. 454, 210 P.2d 985.

 It requires no citation of authority to state as a general rule that a dismissal "with prejudice" is a dismissal on the merits. And the principle stated in 149 A.L.R. 626, that

"Where a judgment dismissing an action 'with prejudice' is rendered upon a stipulation of the parties, it operates as a bar to another action upon the same cause [citing cases]."

may be supported in reason as well as authority. Thus, if the instant suit be on the same cause of action as was the Fremont County action, it is clear that the plaintiff here would be barred from relitigating the validity of the August 1, 1955 agreement, for the validity of that agreement was certainly a question which "might have been presented and determined" in the Fremont County action. Massachusetts Bonding & Ins. Co. v. Ginsberg, 1955, 131 Colo. 1, 278 P.2d 1018, 1019.

The plaintiff contends that the two actions are different, and thus it only is estopped from relitigating the facts actually litigated and precisely determined in the Fremont County action—of which there were none. The theory relied upon to support the contention that the instant suit is not the same cause of action as was the Fremont County action is that the same evidence would not sustain both. Pomponio v. Larsen, 1926, 80 Colo. 318, 251 P. 534; Fort v. Bietsch, 1929, 85 Colo. 176, 274 P. 812; Sloniger v. Rains, 1949, 120 Colo. 339, 208 P.2d 941; Newby v. Bock, supra.

 While the foregoing cases indicate that the "evidence" test is used in Colorado to determine the similarity of causes of action, in the opinion of the Court the different acts of interference by Benton and Brady alleged in the two

suits, and the addition of the mining lease between Herlacher and the plaintiff in the instant suit, do not constitute sufficient dissimilarity in the evidence necessary to create distinct causes of action.

It is said in 2 Freeman on Judgments, 5th edition, § 688, pg. 1450:

"But if the right to be maintained is identical, a mere difference in some of the evidence by which the right is to be established does not make a difference in the cause of action. This is apparent when we consider the essential distinction between the grounds of action and the cause of action. If a different ground of action is alleged in each case, different evidence is to that extent necessary in each, yet the cause of action may be the same in both actions and the judgment in one a bar to the other."

The two actions here involved disclose one primary right, i.e., the right to possession of the "Lightning Group" claims, and, one primary duty, i.e., the obligation to respect that right of possession, and each act constituting a delict of that duty could not change one cause of action into many. Cf. Vinson v. Graham, 10 Cir., 1930, 44 F.2d 772, certiorari denied 283 U.S. 819, 51 S.Ct. 344, 75 L.Ed. 1435.

 Thus, the determination of the validity of the dismissal with prejudice in the Fremont County action would be requisite to an adjudication of any ruling based upon the substantive principles of res judicata. This, again, is a matter more properly before the Colorado Supreme Court.

However, the final contention of the plaintiff in opposition to the defendants' Benton and Brady plea of res judicata is, in the opinion of the Court, well taken.

 The rule stated in Murrell v. Stock Growers' National Bank of Cheyenne, 10 Cir., 1934, 74 F.2d 827, 832, that

"A party may waive his right to assert the conclusiveness or bar of

a judgment under the doctrine of res judicata [citing cases]," is firmly established. This, the Court must conclude, the defendants Benton and Brady have done here.

On June 16, 1956, Herlacher, as plaintiff in the Fremont County action filed therein a motion to vacate and set aside the dismissal of March 30, 1956, and as grounds therefor stated that the stipulation for dismissal was entered by Herlacher's then attorneys "inadvertently by mistake and under a misapprehension as to the legal effect thereof, and without the consent of the plaintiff."

Thereafter, on August 7, 1956, the defendants Benton and Brady filed in that court their Objections to Hearing Motion to Vacate and Set Aside Stipulation for Dismissal. An attack was made on the sufficiency of the plaintiff's motion, and inter alia was alleged therein,

"1.

"That the Plaintiff, Victor C. Herlacher, has abandoned said proceedings in the above entitled Court [the District Court of Fremont County] and has instituted proceedings in the United States District Court for the District of Colorado in which the same matters are involved.

"2.

"That the Court is without jurisdiction to consider or entertain said Motion for the reason that there is another action pending in the United States District Court for the District of Colorado involving the same subject matter."

Thereafter, on August 14, 1956, the District Court of Fremont County entered an order finding sufficient grounds stated in defendants' objections to plaintiff's motion to vacate and denied the latter. In its order the court stated that it had examined the records and files of the instant action then pending in this Court

"and from which it appears that said action pending in the United States District Court for the District of

Colorado involves the same subject matter, and that all of the parties to the within action are parties to said action in the United States District Court, and that the Plaintiff, Victor C. Herlacher, simultaneously with the filing of his Motion to Vacate and Set Aside Stipulation for Dismissal, filed his Answer to the Complaint of Plaintiff in said United States District Court wherein he did not allege or plead in bar the pendency of an action in the District Court in and for the County of Fremont, in the State of Colorado and thereby voluntarily submitted to the jurisdiction of the United States District Court for the District of Colorado."

It thus clearly appears from the foregoing motions and order that the defendants Benton and Brady in effect stated to the District Court of Fremont County that it should not vacate its order of dismissal because the same action involving the same subject matter and between the same parties was pending for adjudication in a different forum. The order of that court refusing to vacate its prior order of dismissal adopted this contention. Then the defendants Benton and Brady come into this Court and in effect state that this Court cannot adjudicate the issues because the claim is barred due to the dismissal of the Fremont County action. This will not do. In Hickey v. Johnson, 8 Cir., 1925, 9 F.2d 498, 504, it is said:

"We think, before a party can be held conclusively to have waived this defense [res judicata], he must have assumed a position so inconsistent with its assertion as to amount to an election to abandon it, or the proceedings must have reached such a state that allowance of the defense would be inequitable. Bryar v. Campbell, 177 U.S. 649, 20 S.Ct. 794, 44 L.Ed. 926; Pratt v. Wilcox Mfg. Co., (C.C.) 64 F. 589; Cooley v. Snake River Imp. Co., 78 Or. 384, 152 P. 1190."

Somewhat similar situations were presented in Reeves v. Philadelphia Gas

Works Co., 1933, 107 Pa.Super. 422, 164 A. 132, and Cassidy v. Berkovitz, 1916, 169 Ky. 785, 185 S.W. 129, where in the former the plea of res judicata was waived by one who had successfully objected to the proper consolidation of two actions and had then sought to raise the first in bar to the second, and where in the latter one by not opposing two actions where one would have been proper had waived any right to set up the first in bar to the second.

And in Sewell Paint & Glass Co. of Texas v. Booth Lumber & Loan Co., 1932, Tex.Com.App., 50 S.W.2d 793, it was held that one could not successfully plead res judicata of an issue which through his own objection his opponent had been prevented from litigating in a prior action. See also United Bank & Trust Co. of California v. Hunt, 1934, 1 Cal.2d 340, 34 P.2d 1001; Corona Inv. Co. v. Riedman, 1936, 11 Cal.App.2d 648, 54 P.2d 85; Hall v. Coyle, 1952, 38 Cal.2d 543, 241 P.2d 236.

The situation presented here is no less a waiver by Benton and Brady of their defense of res judicata as tested by Hickey v. Johnson, supra, than was presented in the foregoing cases, and this notwithstanding their incorporation of the defense in their answer filed June 1, 1956. Litigants cannot blow hot and cold.

As to the dereliction of Herlacher mentioned in the Order of August 14, 1956, of the Fremont County District Court, suffice it to say that on August 22, 1956, he filed in this Court a Motion to Vacate Pre-Trial Conference and Trial, alleging as grounds therefor the writ of error to the Fremont County action then and now pending in the Colorado Supreme Court. Upon the objections of Benton and Brady and the somewhat anomalous opposing position of the plaintiff, Herlacher's motion was denied. Be that as it may, in the opinion of the Court, for the reasons above stated, the defense of res judicata is ill-taken, and the Court's attention will now be turned to the merits of the action.

In the opinion of the Court, the agreement of August 1, 1955, notwithstanding its highly informal form, is a lease agreement between the parties thereto, and clearly shows their intention that it be construed as such. Of the essentials of a lease agreement, it was said by the Supreme Court of Colorado in Carlson v. Bain, 1947, 116 Colo. 526, 182 P.2d 909, 911:

"We have said that 'Under the authorities, to create a valid contract of lease but few points of mutual agreement are necessary; First, there must be a definite agreement as to the extent and bounds of the property leased; second, a definite and agreed term; and, third, a definite and agreed price of rental, and the time and manner of payment. These appear to be the only essentials * * *.' Cochrane v. Justice Mining Co., 16 Colo. 415, 418, 26 P. 780."

The extent and bounds of the property leased are set forth with adequate sufficiency in paragraph five of the agreement. While there is an erroneous description of the section in which it is stated all of the claims are located, for five of the group were shown to be located in Section 14 of Township 47 North, Range 11 East, rather than Section 11, this fact is immaterial, as the claims were also described as being "known as the lightning group," and it is clear from the evidence adduced at the trial that the parties to the agreement were all aware of the location, extent, and boundaries of the "Lightning Group." Cf. Boyd v. McElroy, 1940, 105 Colo. 527, 100 P.2d 624; Andrew v. Carlile, 1894, 4 Colo.App. 336, 36 P. 66; Williams v. James, 1938, 188 La. 884, 178 So. 384.

The term of the lease is also sufficiently stated. It, the lease, is "to continue indefinitely as long as it continues six months of each year." The only reasonable construction of this "habendum clause" is that the lease remains in force so long as the lessee in good faith conducts mining operations six months of

each year on the leased premises. The fact that the common "so long as" term found in many mining leases is not in this instance preceded by a stated period of time should not void this lease for indefiniteness. The royalty provision contained in the instrument clearly meets the third requirement set forth in Carlson v. Bain, supra.

Apparently, the same Court which authored the Carlson decision has modified the rule stated therein with respect to the "essentials" of a lease in so far as they apply in determining whether a written instrument is to be treated as a lease agreement, or merely a writing preliminary to a binding lease. In American Mining Co. v. Himrod-Kimball Mines Co., 1951, 124 Colo. 186, 235 P.2d 804, 807., it was said of Reno Club v. Young Investment Co., 1947, 64 Nev. 312, 182 P.2d 1011, 173 A.L.R. 1145, wherein the Nevada court stated the same "essentials" as were stated in Carlson v. Bain, supra:

> "In the Reno Club case, supra, the court set forth specifically what it considered to be the 'essential terms' of a lease. This classification, however, we do not adopt, since it is entirely too restrictive. Our research discloses a lack of unanimity among decisions of courts of last resort as to what constitutes 'essential terms' in contracts generally, and particularly in instruments executed as preliminaries to contracts therein specified to be executed later. In such instances, we adhere to that which we believe to be the better and most generally accepted rule, that the 'essential terms' must, in each case, be determined from the intention of the parties as disclosed upon consideration of all surrounding facts and circumstances there prevailing."

The American Mining Co. case dealt with a unilateral instrument by which it appeared "manifest that further negotiations were required to work out important and essential terms and conditions of the formal lease and bond to be drafted later." 235 P.2d at page 808.

The defendants Benton and Brady allege here that the instrument in question is nothing more than a memorandum of preliminary negotiations. But there is nothing in the instrument itself which discloses any intention of the parties to the effect that the instrument was merely a preliminary step in the negotiations of a formal lease, nor did the testimony of the surrounding facts and circumstances given at the trial, including the subsequent preparation of a more formal mining lease by the defendant Herlacher, which upon presentation to the defendants Benton and Brady was rejected by them, produce any basis for holding other than at the time of its execution the instrument in question was considered by all parties as a binding lease.

 Even if it were a fact that the defendants Benton and Brady, as lessors, as well as the lessee, Herlacher, contemplated the execution of a more formal lease subsequent to the execution of the agreement in question, which fact is in contradistinction to their contention, as discussed below, i.e., that they never intended to give a lease, but only a license, under these circumstances, their contention is still without merit. In Loewi v. Long, 1913, 76 Wash. 480, 136 Pac. 673, 674, cited with approval in McKennon v. Anderson, 1956, Wash., 298 P.2d 492, 495, it was said:

> " 'To determine whether or not a contractual relation has been established by informal writings, such as letters and telegrams, where the parties have in mind the subsequent signing of a formal written contract, it is necessary to inquire (a) whether the subject-matter has been agreed upon, (b) whether the terms are all stated in the informal writings, and (c) whether the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract. If the subject-matter is not in dispute, the terms are agreed upon, and the intention of the parties plain, then

a contract exists between them by virtue of the informal writings, even though they may contemplate that a more formal contract shall be subsequently executed and delivered.'"

 This rule embraces both the "essential terms" requirement as set forth in Carlson v. Bain, supra, and Cochrane v. Justice Mining Co., 1891, 16 Colo. 415, 26 P. 780, supra, and also the "intention" test of the American Mining Co. case, supra. The Court having found the usual essential elements and also the intention of the parties that the instrument of August 1, 1955 be considered binding, it must be held that it does constitute a lease agreement between Benton and Brady as lessors, and Herlacher as lessee.

The contention of defendants Benton and Brady that the agreement be considered a license rather than a lease must also fall. The distinction between the two, although in some instances difficult of application, is well established. See Cary Hardware Co. v. McCarty, 1897, 10 Colo.App. 200, 50 P. 744, 746; 3 Lindley on Mines, § 860, pg. 2129; 36 Am. Jur. Mines and Minerals, § 40, pg. 309; Uranium Mining Lease, 27 Rocky Mtn. L. R. 425, 426. Suffice it to say that the instrument here in question clearly indicates the intention of the parties to enter into a mining lease rather than a license.

 Finally, in this regard, Benton and Brady state that because the Location Certificates show the discovery date of the eight claims in the "Lightning Group" as being August 9, 1955, on August 1, 1955, the date of the lease agreement between themselves and Herlacher, they had nothing to give, hence Herlacher got nothing and consequently had nothing to lease to D.A.C. While the evidence clearly showed the discovery to have taken place some time in July, 1955, it is not necessary to discuss what effect a mistake made by a third party in the preparation of a Location Certificate may have, for it is well settled that a lessor is estopped from denying his own title, and that after-acquired title inures

to the leasehold interest. Sinclair Refining Co. v. Clay, D.C.Ohio 1951, 102 F.Supp. 732, affirmed 6 Cir., 194 F.2d 532; Tennessee Barium Corp. v. Williams, 1939, 23 Tenn.App. 398, 133 S.W. 2d 1015; Liberal Savings & Loan Co. v. Frankel Realty Co., 1940, 137 Ohio St. 489, 30 N.E.2d 1012; Stein v. McGinley, 123 Pa.Super. 122, 186 A. 231 (1936); Hoxie State Bank v. Brewer, 1924, 115 Kan. 756, 224 P. 896; Skidmore v. Pittsburg, C. & St. Louis Ry. Co., 1884, 112 U.S. 33, 5 S.Ct. 9, 28 L. Ed. 626.

Proceeding to the mining lease of September 24, 1956, whereby Herlacher as lessor leased the eight claims known as the "Lightning Group" to the plaintiff D.A.C.: The term was twenty years with an option in the lessee to remain in possession thereafter so long as mining operations continue to be profitable. By paragraph 5, the lessor was to receive royalties of 15% of mill returns and 15% of any Government bonus. By paragraph 8, inserted in the instrument in long-hand, the lessor was to be paid "Fifteen (15%) per cent. of the net profit after taxes."

 In the opinion of the Court, the instrument is clearly a sublease rather than an assignment. The distinction between the two is set forth in Gordon Inv. Co. v. Jones, 1951, 123 Colo. 253, 227 P.2d 336, 340:

"* * * The general rule, which we think is applicable to the instant case, is stated in Roberson v. Pioneer Gas Co., 173 La. [313] 314, 137 So. 46, 48, 82 A.L.R. 1264, as follows: 'The distinction between an assignment of a lease and a sublease is that, in an assignment, the assignor transfers his entire interest in the lease in so far as it affects the property on which the lease is assigned; whereas, in a sublease, the original lessee, or sublessor, retains an interest in the lease in so far as it affects the property subleased —by imposing some obligation upon the sublessee, in favor of the sub-

lessor, such as an obligation to pay additional rent to the sublessor.'"

See also, Jackson v. Sims, 10 Cir., 1953, 201 F.2d 259; National Shawmut Bank of Boston v. Correale Mining Corp., D.C. W.Va., 1956, 140 F.Supp. 180; Campbell v. American Limestone Co., D.C.Tenn. 1951, 109 F.Supp. 741, affirmed 6 Cir., 201 F.2d 670. The most casual reading of the mining lease between Herlacher and D.A.C. discloses that Herlacher did not divest himself thereby of his entire interest in the "Lightning Group." But whether the instrument is considered an assignment or a sublease, is immaterial insofar as the right of Herlacher to assign or sublease to D.A.C. is concerned —in the absence of express prohibition, he had the right to do either. Ochsner v. Langendorf, 1946, 115 Colo. 453, 175 P.2d 392; Sinclair Refining Co. v. Clay, 102 F.Supp. 732, supra; Leslie v. Sherman, 1943, 157 Kan. 157, 139 P.2d 133; Stone v. Martin, 1947, 185 Tenn. 369, 206 S.W.2d 388; 1130 President St. Corp. v. Bolton Realty Corp., 1950, 198 Misc. 198, 97 N.Y.S.2d 422; Patterson v. Butterfield, 1928, 244 Mich. 330, 221 N.W. 293.

It must be held then, that the agreement of August 1, 1955, is a valid lease and gave to Herlacher such interest in the "Lightning Group" claims as was within his power to sublease to the D.A.C. Uranium Co., who by virtue of such sublease is now in rightful possession of the eight mining claims known as the "Lightning Group," and so long as mining operations are conducted thereon in good faith for six months of each year, it is incumbent upon the defendants Benton and Brady to respect this right of possession and to refrain from interfering therewith.

There is no proof of any monetary damage to the plaintiff, which issue was sought to be raised at the time of trial and, of course, the allegation of and prayer for damages set forth in the counter-claim of the defendants Benton and Brady was not sustained. Accordingly, neither plaintiff nor defendants are entitled to damages.

In the opinion of the Court the findings of fact and conclusions of law expressed in this memorandum opinion are sufficient to meet the requirements of Rule 52(a) Fed.Rules Civ.Proc., 28 U.S.C.A., and the preparation and filing of formal findings of fact and conclusions of law may be dispensed with.

Counsel for plaintiff will prepare and serve judgment and decree in conformity herewith. If stipulation as to the form thereof cannot be reached, its settlement may be submitted to the Court on notice.